FREEMAN, Respondent, vs. DELLS PAPER & PULP COMPANY, Appellant.

*March 15—June 4, 1912.*

*Principal and agent: Implied authority of agent: Scope of authority: Master and servant: Injury: Incompetency of fellow-servant: Proximate cause: Evidence: Competency: Witnesses: Cross-examination: Impeachment.*

1. An agent has implied authority to do all those things which are reasonably necessary and proper to carry into effect the main powers conferred and which are not forbidden; and secret instructions cannot affect his apparent powers to the detriment of third persons who have dealt with him on the faith thereof.

2. Plaintiff was injured while working at certain logging operations which one M. had contracted to perform for defendant. The question being as to whether, pursuant to a clause in the contract with M., defendant had by its agent taken charge and control of such logging operations, so that plaintiff, when injured, was a servant of defendant and not of. M., directions given by defendant's agent to the men in the logging camp, as to what they were to do and how the work should be conducted, were competent evidence, as being *acts* of the agent, not mere oral statements affecting the question of his agency.

3. Evidence showing, among other things, that an employee engaged in loading logs on a flat car was young and inexperienced and did not place the logs which were to ride above the stakes of the car and the cross-chains attached thereto, in proper shape so that they would lie securely and properly tie the load, this being work which required the exercise of some skill, judgment, and care, is *held* sufficient to sustain a finding by the jury that he was incompetent.

4. The fact that a log fell off and injured plaintiff some time after the loading was completed, when the car was being moved down the track, and in the absence of the loader, does not show that the incompetency of the loader was not the proximate cause of such injury.

5. A party asking a witness an immaterial question on cross-examination is bound by the answer given, and it is error to permit the witness to be impeached relative thereto.

6. This rule applies where a witness is asked on cross-examination if he had not stated on a former occasion that another witness (who had not been interrogated in regard to the matter) had

made overtures to him suggesting an attempt at subornation of perjury, and denies making any such statement.

7. In such case evidence offered ostensibly to impeach the witness so interrogated was in effect an impeachment of the other witness involved, and where the latter was an important witness for the party calling him, and especially where the court refused to permit him to give his version of the matter, its admission was prejudicial error.

APPEAL from a judgment of the circuit court for Rusk county: JOHN K. PARISH, Judge. *Reversed.*

Action for personal injury sustained by the plaintiff on the 11th day of March, 1908, while, it is claimed, he was an employee of the defendant. The complaint contains appropriate allegations of the failure on the part of the defendant to discharge various duties owing to the plaintiff, including the failure to furnish a reasonably safe place to work, reasonably safe implements or equipments with which to work; failure to furnish a competent superintendent, competent fellow-servants, and sufficient number of fellow-servants; and failure to warn plaintiff of dangers known to the defendant but not known to him. The only negligence, however, which the evidence of the plaintiff tended to sustain was that in support of the allegation in the complaint "that it was the duty of the said defendant, its officers and agents, to furnish competent fellow-servants to work with said plaintiff and to furnish a competent person to load the logs on said car, and not to exact or require this plaintiff to work with an incompetent, careless, and unskilful person in or about any of such logging operations;" that defendant failed to perform its duty in that respect, and that the plaintiff, while in the exercise of ordinary care, was injured as a result of such failure.

The answer admits that plaintiff sustained some injury on or about the 11th day of March, 1908, but denies each and every other allegation of the complaint, including the allegation that the plaintiff at the time of the injury was in the employ of the defendant.

It appears that on the 5th day of June, 1907, the defendant and one Charles Mechling entered into a logging contract whereby Mechling was to cut and skid certain hemlock logs belonging to the defendant. The contract provided, among other things, that the scale of the logs was to be kept by a person to be mutually agreed upon, and that a separate record was to be kept of each log skidded, and that the scale so kept was subject to the supervision of scalers at Eau Claire; that, whenever requested, Mechling was to furnish a statement of supplies on hand, wages due, and also debts contracted of every kind and character which might be enforced as a lien upon the said logs. It further provided that defendant was to make advancements from time to time; that $3 a thousand was to be paid when the logs were skidded and the balance when the logs were received and scaled in the yard, provided there were no claims against said Mechling on logs or pulp wood. It was further provided that "in case the party of the first part shall at any time fail to perform any of the conditions of this contract on its part, or in the event that any fraud or irregularity is discovered in the scale, then and in that case the party of the second part may in their discretion take possession of logs and of property of said party of the first part used in doing said work and may cut, haul, and deliver said logs as aforesaid and complete said contract at the expense of the first party, or terminate this contract upon giving five days' notice in writing to the first party." Mechling started his camp under this contract, hired the plaintiff, and continued to put in logs for the defendant until on or about the 1st day of March, 1908, when, it is claimed by plaintiff, the defendant took charge of the work pursuant to the provisions of the contract. The defendant denies that it took charge of the work and claims that its agent, Patrick, was in Mechling's camp only for the purpose of seeing that no lienable claims accrued on its logs.

At the time of the injury and for several days prior thereto

the plaintiff and one Peter Skalski were engaged in loading logs upon a flat car. The car had stakes about six feet high and the logs were loaded level with these stakes, a chain put across, and then several tiers of logs put on top to bind the load. After the car was loaded it was hauled to a sidetrack a short distance away, and, while so being hauled, one of the logs lying above the stakes fell off and injured plaintiff. Plaintiff claims that prior to the injury he notified defendant's agent, Patrick, that Skalski was an incompetent loader and that he would not work with him any longer on that account; that Patrick asked him to remain, stating that he would get a competent loader as soon as possible; that, relying upon the promise so made, the plaintiff continued in the employment until he was injured. Defendant denies that plaintiff notified Patrick of the incompetency of Skalski, and denies that any promise to furnish a competent loader was made by its agent, Patrick.

The jury found (1) that there was an agreement or understanding between the defendant, the *Dells Paper & Pulp Company,* and Charles Mechling that the defendant should retain and exercise the right to direct the manner and means of carrying out the contract entered into by them; (2) that the defendant was in fact exercising and directing the manner and means of carrying out said contract on or before March 11, 1908, the day upon which plaintiff was injured; (3) that the witness Patrick took possession and control in carrying on the work by and for the defendant, as its superintendent, at the time plaintiff was injured; (4) that Patrick as superintendent for defendant did employ the plaintiff to work for defendant before the plaintiff was injured; (5) that the defendant gave the said Patrick apparent authority to employ the plaintiff for the defendant before the plaintiff was injured; (6) that Peter Skalski was an incompetent person to discharge the duties of loader; (7) that plaintiff informed the said Patrick that the said Skalski was an incompetent per-

son to perform the duties of loader before his said injury; (8) that plaintiff made objections to said Patrick to Skalski's continuing loading cars by reason of its being dangerous to him while the said Skalski was acting as loader; (9) that said Patrick promised the plaintiff to replace said Skalski with another loader; (10) that the plaintiff continued to work with Skalski in loading cars, relying on the promise of said Patrick to procure a competent loader in the place of said Skalski; (11) that plaintiff was injured by reason of the incompetency of said Skalski as loader; (12) that the incompetency of said Skalski was the proximate cause of said plaintiff's injuries; (13) that plaintiff was not guilty of any want of ordinary care which contributed proximately to produce his injuries; and (14) that plaintiff sustained damages in the sum of $10,500.

On the coming in of the verdict defendant moved, first, for judgment in its favor notwithstanding the verdict, or, second, that each of the several answers of the jury to the questions submitted be reversed, except as to question number 14, and that the sum of $4,000 be there substituted for $10,500, or, third, for judgment in favor of defendant on the record, the minutes of the court and upon the special verdict as amended, or, fourth, for an order setting aside said verdict and for a new trial, for the reasons, among others, that the court erred in the admission of evidence offered by the plaintiff, that the court erred in the exclusion of evidence offered by the, defendant, and because of other errors appearing on the record and minutes of the court. ·(The record reads, as to the first ground, "because the court erred in the admission of evidence offered by the defendant," but on the oral argument it was admitted that the word "defendant" was intended to mean plaintiff, and that it so appeared in the record owing to a clerical error.)  Thereafter an order was made denying defendant's first, second, and third motions, and denying defendant's fourth motion on all grounds except that the dam-

ages were excessive, and the court set aside said verdict on such ground unless the plaintiff remitted $2,000 from the amount awarded by the jury. Plaintiff filed a consent to remit said sum of $2,000, whereupon an order was made directing judgment to be entered upon the verdict in favor of the plaintiff for the sum of $8,500 damages, and costs. From a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *Bundy & Wilcox,* and oral argument by *C. T. Bundy.*

*W. H. Frawley* and *T. F. Frawley,* for the respondent.

The following opinion was filed April 3, 1912:

VINJE, J. Defendant claims the evidence does not sustain the finding that it had taken charge of the logging operations in Mechling's camp at the time plaintiff was injured, and hence that the relation of master and servant did not exist between the parties. Plaintiff's evidence on this subject was to the effect that Patrick was an experienced woodsman and cruiser who had been employed by the defendant for seven or eight years; that from the time he went up there about the 1st of March he remained almost continuously till the injury occurred on the 11th; that the amount of Mechling's scale was in dispute, the defendant claiming it was from ten to fifteen per cent. too high; that at the end of the season a deduction of 200,000 feet was made; that Mechling was running behind on his contract, and this was known to the defendant and discussed by its officers; that Lee & Company, who had furnished supplies to Mechling, refused to furnish more, and were applying money advanced by defendant to the payment of supplies instead of to the payment of labor claims; that Mechling was then indebted to Lee & Company in the sum of about $1,000; that defendant itself refused to pay any more time checks, and there were claims against the pulp wood delivered. Such, the evidence of plaintiff shows, was the condition of affairs known to the defendant when

Patrick went to the camp about March 1st, and this condition, the evidence shows, was discussed by Stilp, who was then in charge of defendant's business, and Patrick, and it was their opinion that it cost Mechling too much to log. It was not possible to ascertain from the officers of the defendant just what instructions were given Patrick, but he testified that whatever instructions were given him he carried out when he arrived at the camp. The evidence of plaintiff also shows that when Patrick came to the camp he assumed full control of the operations. He gave all the orders. He hired men, and discharged at least one man. He made out all the time checks except the one given to the plaintiff, which was made out by Mechling at Patrick's request. Supplies were bought by him and sent to the camp in the name of the defendant. Mechling gave no more orders to the men, but became a common laborer, though the evidence showed he had worked as a laborer while he had charge of the camp earlier in the winter. The defendant's evidence on this subject contradicted plaintiff's in many material respects. So it became a question for the jury to say which was the more credible, and to find therefrom what the fact was as to whether or not the defendant had taken charge of the work at the time plaintiff was injured. *Ames v. D. J. Murray Mfg. Co.* 114 Wis. 85, 89 N. W. 836. Defendant admitted that Patrick was its agent and had been in its employ for seven or eight years, but it denied that he had authority to take charge of the camp for it. The question presented, therefore, was the scope of Patrick's authority as agent of the defendant, not the question of his being an agent for any purpose or at all. It is admitted that he was defendant's agent. Being such, and being the only representative of the defendant at the camp, it follows that, if defendant did take charge of the work, Patrick had authority to prosecute it in the usual and customary manner. *Ames v. D. J. Murray Mfg. Co., supra; Parr v. Northern E. Mfg. Co.* 117 Wis. 278, 93 N. W. 1099; *Arnold v. Nat. Bank,* 126

Wis. 362, 105 N. W. 828; *Abrohams v. Revillon,* 129 Wis. 235, 107 N. W. 656. In the *Parr Case, supra,* the court said:

"It is well understood that every delegation of power carries with it the authority to do all those things which are reasonably necessary and proper to carry into effect the main powers conferred, and which are not forbidden, and that secret instructions cannot affect such apparent powers to the detriment of third persons who have dealt with the agent on the basis of his apparent authority."

It is urged that the statements of Patrick made in giving orders to the men were inadmissible in evidence on the ground that agency cannot be established by the declarations of the alleged agent. They were not received for the purpose of establishing Patrick's agency, for that was admitted. They were competent upon the question as to whether or not the defendant took charge of the work. Upon this question, evidence as to the situation of the parties to the Mechling contract, what the defendant did, and what Mechling did, was competent. And the giving of directions by Patrick to the men as to what they were to do, and how the work should be conducted, must be regarded as the *acts* of the defendant's agent and not as mere oral statements affecting the question of his agency. The giving of an oral order to the men was an act in the sense that it showed what the agent did. We therefore conclude the court did not err in permitting evidence of the directions given by Patrick to the men while in camp. Such evidence bore upon the disputed question as to whether or not Mechling or the defendant was carrying on the work at the time plaintiff was injured.

The evidence as to Skalski's incompetency as a loader is quite vague and unsatisfactory. It is to the general effect that he was not handy with the hook; that he could not catch hold of a log as he ought to; that he was awkward and got off the cars when the logs came up. But there is also some evidence that he did not place the logs in proper shape so that they would lie firmly on the load. He was a young man,

quite inexperienced in loading logs, and it is evident that the loading of logs, at least above the stakes of the car, requires the exercise of some skill, judgment, and care in order that the logs may lie as securely and firmly as practicable and properly tie in the load. The jury evidently thought he lacked this skill or judgment, or both, and found him incompetent. We cannot say that such finding is not supported by the evidence.

A further point is made by the defendant that the incompetency of the loader was not the proximate cause of plaintiff's injury, since the loading had been finished sometime before plaintiff started to move the car down the track at which time the log fell off and injured him. The jury found that the incompetency of Skalski was the proximate cause of the injury to plaintiff, and in so doing they must have found that the log fell off by reason of its not having been properly loaded. It is not necessary that the proximate cause be immediate in time. *Deisenrieter v. Kraus-Merkel M. Co.* 97 Wis. 279, 72 N. W. 735. The fact that the accident took place sometime after the loading was completed and when the loader was not present is immaterial.

John LaSpronce was sworn as a witness for defendant and testified in chief as to how the work was conducted in Mechling's camp and more particularly as to how Skalski loaded the cars and how it was customary to load cars in logging camps. Upon cross-examination he was asked, against defendant's objection, if at a certain time and place he stated to one Charles Hunter that the witness Patrick had requested LaSpronce to sign a paper stating that the defendant had not taken the contract out of Mechling's hands and that Patrick had offered to give LaSpronce the Mechling contract if LaSpronce would sign such paper, and that LaSpronce refused to do so. In reply to this inquiry the witness stated that he had not made such statement to Hunter, that he had not signed any paper for Patrick, that Patrick had not asked him

to sign any paper, that Patrick did not offer him the Mechling contract, or any contract, as a condition of his signing any paper, but that Patrick had spoken to him at one time about taking a contract to put in some other timber, and that that conversation had no reference whatever to this case and had nothing to do with it. Afterwards plaintiff called Charles Hunter as a witness and he was permitted, against defendant's objection, to testify that LaSpronce had made the alleged statement to him. Later the defendant recalled Patrick and offered to prove just what statements he had made to LaSpronce and what the facts were with reference to the conversation between him and LaSpronce, but he was not permitted to testify. The court clearly erred in permitting Hunter to testify as to the alleged statement made to him by the witness LaSpronce. Even if the facts were as claimed by the witness Hunter, they would not tend to discredit the witness LaSpronce in the least, because there was no claim that LaSpronce signed such paper or took a contract under any agreement that he would claim that the defendant was not in charge of the work at the time plaintiff was injured. The only effect such testimony could have would be to discredit the witness Patrick. He had not been interrogated on the subject at all. The alleged statement of LaSpronce was not in conflict with any testimony that he had given in court, therefore it did not tend to contradict or impeach his evidence. So far as his testimony was concerned, it was entirely immaterial whether or not he made the statement or whether or not Patrick had made the statement to him, for the evidence is uncontradicted that he refused to comply with the suggestions or offers of Patrick, if any were made to him. A party asking a witness an immaterial question on cross-examination is bound by the answer given and it is error to permit the witness to be impeached relative thereto. *Crawford v. Christian,* 102 Wis. 51, 78 N. W. 406; Jones, Ev. (2d ed.) § 827 (827, 828). The effect of Hunter's evidence, how-

.ever, if believed, was to directly impeach and discredit the witness Patrick in a very material respect. If the jury believed Hunter's testimony, they might come to the conclusion that Patrick was guilty of an attempt to suborn a witness for the defendant, and that he was therefore unworthy of belief as to any matter in dispute between the parties. The prejudicial effect of such evidence becomes more apparent when it appears, as the fact was, that the only testimony in the case to show that plaintiff complained to Patrick that the loader Skalski was incompetent was the testimony of the plaintiff himself, and this testimony the witness Patrick flatly contradicted. The jury may well have come to the conclusion that plaintiff, and not Patrick, was to be believed in this matter in dispute, because of the fact that Hunter's testimony left Patrick impeached and discredited. Plaintiff was permitted to show an attempt on the part of Patrick to suborn a witness, but the defendant was not permitted to disprove such alleged attempt. The ruling was in effect the same as permitting only one party to introduce evidence as to a material fact in dispute. It was clearly prejudicial, and must result in a new trial. The defendant's case rested largely on the testimony of the witness Patrick, and entirely so upon the question as to whether or not plaintiff had complained of Skalski's incompetency as a loader and as to whether Patrick had promised to hire another man in Skalski's place as soon as possible. Any improper impeachment of so important a witness must be deemed prejudicial error.

Since there must be a new trial for the reasons stated, several alleged errors relating to instructions given and refused, as well as to the refusal to submit certain questions proposed by the defendant and the giving of other questions contained in the special verdict, will not be noticed. They are of minor importance and not likely to recur upon another trial.

For the errors committed by the trial court in permitting the witness Hunter to testify apparently to impeach the wit-

ness LaSpronce, but in fact to impeach the witness Patrick, and in refusing to permit the witness Patrick to testify in reply thereto, the judgment must be reversed and the cause remanded for a new trial.

*By the Court.*—Judgment reversed, and cause remanded. for a new trial.

A motion for a rehearing was denied June 4, 1912.