WEIGELL, Respondent, vs. GREGG and husband, Appellants.

*October 7—October 26, 1915.*

*Appeal: Review: Conclusiveness of findings: Mortgages: Implied agency to receive payments: Possession of securities: Trust companies: Tender: Payment into court: Foreclosure: Solicitor's fee.*

1. A finding by the trial court which, though nominally a finding of fact, is in the nature of a legal conclusion from undisputed evidence has not the same conclusiveness on appeal as a finding resting upon probative disputed facts, but may be disregarded almost as readily as a pure error of law.

2. A note and mortgage given by defendant to a trust company, payable to it at its offices, were sold and delivered to plaintiff. Defendant paid the interest to the trust company for five years. Then, by written agreement between defendant and the trust company as agent for the owner (whose identity was not disclosed), the time for payment was extended, defendant agreeing therein to pay the principal and interest to the trust company as agent. Plaintiff consented to this agreement. Afterwards defendant paid interest and also, before it was due, a part of the principal to the trust company. *Held*, that plaintiff had given the trust company apparent authority to receive such payments and was bound thereby.

3. The mere fact that an agent has not possession of notes or securities at the time of payment is not conclusive that he has no authority to receive such payment.

4. In view of the broad statutory powers of trust companies and the universal custom of dealing with them as principals, though known to be agents or trustees, their authority to act need not be established by the same strict rules that obtain in case of individuals.

5. As against persons who in good faith and without negligence have relied upon the authority of a trust company to act in a business matter of which, to the knowledge of its principal, it has assumed full charge, such principal must' be held bound by acts of the company which, though in excess of its express authority, are not unusual and are fairly germane to the subject matter intrusted to it.

6. Refusal of the holder to receive the amount due on a note because he claimed a larger sum, did not waive the tender or make it unnecessary to keep the tender good by payment into court as provided in Circuit Court Rule XV.

**7.** An allowance, without evidence, of $200 as solicitor's fee on foreclosure of a mortgage for $4,500 on which the balance due was about $1,550, is reduced to $50.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

Action to foreclose a mortgage for $4,500. Defense, payment of $3,000 and tender of balance. The circuit court found against the defendants and entered judgment for the face of the mortgage with interest, costs, and $200 solicitor's fee. From such judgment defendants appealed.

*Adolph Huebschmann,* for the appellants.

*Charles E. Wild,* for the respondent.

VINJE, J. December 10, 1903, the defendant *Margaret Anna Gregg* executed and delivered to the Citizens Trust Company her note for $4,500 payable in five years and secured by a mortgage on real estate executed by her and her husband, *Walter F. Gregg.* On December 10, 1908, the time of payment of the note was extended five years by an agreement in writing entered into by the Citizens Trust Company as agent for the owner of the note and mortgage as party of the first part and *Margaret Anna Gregg* and *Walter F. Gregg* as parties of the second part. In this extension agreement the defendants agreed to pay the Citizens Trust Company as agent the sum of $4,500 in five years, together with interest at the rate of five per cent. per annum payable semi-annually. This agreement was signed, sealed, witnessed, and acknowledged by the respective parties and was accompanied by eleven semi-annual interest coupons signed by both defendants. The defendants negotiated the loan through one H. J. Mabbett and paid their semi-annual interest to the Citizens Trust Company through him. On August 24, 1909, they paid directly to the Citizens Trust Company $1,000 of principal and it released a portion of

the mortgaged premises. On October 2, 1909, they paid a further sum of $2,000 directly to the Citizens Trust Company and took a receipt for the payment. On January 11, 1904, the plaintiff bought the note and mortgage from the Citizens Trust Company and both were delivered to him and have remained in his possession since. He also bought from time to time a number of other notes and mortgages from it, of which he took and retained possession. The Trust Company collected interest on the notes sold to him and in some cases the principal also, and it would either turn over the cash to him or other securities approved by him in lieu of cash. The Trust Company looked after taxes and the insurance on mortgaged premises and executed releases of mortgages when paid in full. The Trust Company did not notify plaintiff of the payment of the $1,000 and $2,000 principal paid in 1909, and he did not perhaps learn definitely of such payments till September 4, 1913. He then demanded cash or approved securities from it, but received neither. He tried at various times between then and October 2, 1913, when the Trust Company closed its doors and was taken charge of by the commissioner of banking of this state, to get a settlement with it, but without success. On October 7, 1913, he notified the defendants not to make any payments to the Trust Company, and that was the first time the defendants or either of them knew who owned their note and mortgage. The extension agreement was sent to plaintiff and he consented to it, but whether such consent was given before or after its execution does not clearly appear; and he says he is unable to say whether or not he knew by the terms of the agreement that the Trust Company had authority to collect principal and interest. All other notes and mortgages bought by him from the Trust Company as well as the ones in suit were made payable to the Trust Company at its office.

The trial court found that the Citizens Trust Company

had no authority from the plaintiff to receive the partial payments of $1,000 and $2,000, and, since he did not receive the same or any part thereof, defendants are entitled to no credit therefor as against him. This finding rests upon conclusions drawn from the almost undisputed evidence as to the transactions between the several parties rather than upon any conflict in the testimony. It therefore does not carry with it the same conclusiveness as a finding resting only upon probative disputed facts. It is rather in the nature of a legal conclusion drawn from undisputed evidence, which, if not in accordance with the view of this court, can be disregarded almost as readily as a pure error of law on the part of the trial court. This is said not by the way of criticism of the finding made or of its form, but as a reason why this court feels free to disregard it though nominally a finding of fact.

Treating the Trust Company as having no greater general powers than an individual agent, as the trial court evidently did, he came to the conclusion that it had neither express nor implied authority to receive a part of the principal before due. The cases of *Bartel v. Brown,* 104 Wis. 493, 80 N. W. 801; *Kohl v. Beach,* 107 Wis. 409, 83 N. W. 657; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423; and *Bautz v. Adams,* 131 Wis. 152, 111 N. W. 69, tend to support such conclusion, though it is deemed that the undisputed facts bring the case within the doctrine of implied authority even if the agent were an individual instead of a trust company. *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375; *Freeman v. Dells P. & P. Co.* 150 Wis. 93, 135 N. W. 540. In *McDermott v. Jackson* the rule is thus stated:

"If a principal so conducts his business, either through negligence or otherwise, as to lead the public to believe that his agent possesses authority to contract in the name of the principal, such principal is bound by the acts of such agent, within the scope of his apparent authority, in so contracting with any person who, upon the faith of such holding out, be-

lieves, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him, even though such agent have express secret instructions to the contrary. If the principal, by his conduct, imparts to his agent a particular character, he is legally responsible to innocent third persons for all responsibilities which would be incident to such character if it existed by express authority, and without regard to any secret instructions." Pages 72, 73.

In the present case the principal, through the extension agreement, imparted to the Trust Company the apparent power to deal with the whole subject matter of the loan by making it payable to the Trust Company at its office and by failing to disclose his identity, thus making it impossible for the defendants to know who was the owner of the securities. Only a partial payment of principal was made, and there was no special occasion for the production of the note and mortgage, or a demand for them, as in case of a payment in full. There is nothing in the evidence to show that the defendants did not have a right to assume that the Trust Company at all times held possession of the note and mortgage. When paid in full, a failure to demand and receive them is deemed in law negligence on the part of the payor unless excused by special circumstances. *Spence v. Pieper*, 107 Wis. 453, 83 N. W. 660. But a want of possession of securities does not determine the question of authority. In 2 Corp. Jur. 625, the rule is thus stated:

"The mere fact that the agent has not possession of the notes or securities at the time of payment is not conclusive that he has no authority to collect the same, but is only a circumstance to be considered in determining the question; and the facts and circumstances may be such that, notwithstanding the agent has not such possession, he has actual authority, expressed or implied, to make the collection."

A large number of authorities are cited to sustain the rule stated.

In *Central T. Co. v. Folsom*, 167 N. Y. 285, 60 N. E.

599, it is said, quoting from *Doubleday v. Kress,* 50 N. Y. 410:

"The reason of the rule that one who has made the loan as agent and taken the security is authorized to receive payment when he retains possession of the security is founded upon human experience that the payor knows that the agent has been trusted by the payee about the same business, and he is thus given a credit with the payor."

In *Cheshire Prov. Inst. v. Vandergrift* (Neb.) 95 N. W. 615, it appeared that an undisclosed principal directed his agent to make a loan and to take a note and coupons evidencing the loan and the mortgage securing the same in the name of the agent and that he permitted the agent to collect the interest. It was held that such facts tended strongly to show authority on the part of the agent to receive and receipt for the payment of the note and to enter a satisfaction of the mortgage.

But in determining the question of the powers of an agent trust companies do not stand on a parity with individuals. They are by law (secs. 2024—77*i et seq.* Stats. 1913) authorized to act "as agent or attorney for the transaction of business, the management of estates, the collection of rents, interests, dividends, mortgages, bonds, bills, notes, and other securities or moneys" (sub. (7), sec. 2024—77*k*), and under such authority it has become customary in the business world to do just what the plaintiff did in this case—leave it to the Trust Company to collect principal and interest on loans purchased from it, reinvest the moneys collected subject to his right to approve the security, look after the payment of taxes and insurance on mortgaged premises, and execute releases of mortgages when paid.

In the instant case the loan was negotiated by the Trust Company and made payable to it and at its office; interest was paid to it semi-annually for five years, and then it made an extension agreement with the defendants, signed and ac-

knowledged by it.   The principal and interest were made
payable to it and at its place of business.   True, the exten-
sion agreement informed·the defendants that the Trust Com-
pany was acting for an undisclosed principal.   But such
principal, they knew, directed them to deal with the Trust
Company by keeping himself undisclosed.   They were com-
pelled to deal with the Trust Company as long as neither
the principal nor it saw fit to inform them who in fact was
the owner of the note and mortgage.   The custom of dealing
with trust companies on the assumption that they possess
plenary authority to do the things they hold themselves out
as having authority to do, is so general that incalculable
hardships would ensue if their authority to act had to be es-
tablished by the same strict rules that obtain in the case of
an individual acting as an agent.   Where to the knowledge
of a principal they assume full charge of a business matter
he must be held to have constituted them his agent for that
purpose, even though they may exceed express authority, so
long as their action is fairly germane to the subject matter
intrusted to their hands.   The principal cannot be heard to
say, as against those who have in good faith and without neg-
ligence relied upon their authority to act, that he did not ex-
pressly empower them to do an act which relates to and is a
customary transaction in the matter intrusted to them.
Owing to the broad statutory authority given them to act as
agents for others, and the universal custom of the public of
dealing with them as with a principal, though known to be
agents or trustees, they must be held to have authority to act
where they assume to do so, and where their action is not an
unusual one and is germane to the subject matter intrusted
to them, and parties in good faith, and without negligence,
believe that they possess the authority necessary to bind their
principal.

Tested by these principles the case at bar is one where the
plaintiff is bound by the acts of its agent, the Trust Com-

pany, in receiving part of the principal before it became due and in releasing a portion of the mortgaged premises. Payment to it was payment to plaintiff. The trial court, therefore, erred in refusing a credit to the defendants of $3,000 on the note.

On December 10, 1913, the defendants tendered plaintiff the sum of $1,546.16, the amount then due on the note. He refused to receive it, claiming $3,000 more with interest was due. The defendants failed to pay the amount into court as required by Circuit Court Rule XV, and the court properly found that their tender was not kept good. The cases of *Kreutzer v. Lynch,* 122 Wis. 474, 100 N. W. 887, and *Inglis v. Fohey,* 136 Wis. 28, 116 N. W. 857, relied upon by defendants to the effect that plaintiff waived the tender by refusing to accept the money, do not apply to a case like the one at bar where the dispute is as to the amount due. The cases mentioned are where the party to whom the tender was made repudiated *in toto* the contract relied upon by the party making the tender. The mortgage provides for a customary and reasonable sum of money as solicitor's fee. The court found, without any evidence so far as we can discover from the record, that $200 was a reasonable and customary fee. This amount should be reduced to $50.

*By the Court.*—Judgment reversed. The trial court is directed to enter judgment of foreclosure against the premises not released from the lien of the mortgage in favor of plaintiff for the sum of $1,546.16, with interest thereon from December 10, 1913, at six per cent., $50 solicitor's fee, and the costs of the action. Judgment for a deficiency, if any, to be entered against both defendants. The defendants are entitled to their costs upon this appeal.