## ASHVILLE SAV. BANK v. LEE.
### (2 Div. 861.)

(Supreme Court of Alabama. Dec. 10, 1925. Rehearing Granted Jan. 28, 1926. Rehearing Denied May 6, 1926.)

**1. Bills and notes 338—Bank which took note from transferee, properly indorsed by him and by payee, before maturity and for valuable consideration, held holder in due course.**

Bank which took note from transferee, properly indorsed by him and by payee, before maturity and for valuable consideration, *held* holder in due course.

**2. Principal and agent 1.**

Apart from principle of estoppel, agency arises solely from mutual intention of parties.

**3. Principal and agent 24—Whether seller of tractor for which buyer gave note was agent of holder in due course when he took back tractor and agreed to release and deliver up note to maker held for jury.**

Whether seller of tractor for which buyer gave note was agent of holder in due course when he took back tractor and agreed to release and deliver up note to maker *held* for jury.

**4. Bills and notes 538(7)—Instruction that holder in due course of note given by buyer of tractor could not recover, if assenting to agreement between buyer and seller for return of tractor in satisfaction of note, held proper.**

Instruction that holder in due course of note given by buyer of tractor could not recover, if it assented to agreement between buyer and seller that tractor should be returned in full satisfaction of such note, *held* proper.

**5. Appeal and error 1050(1)—In action on note of buyer of tractor by holder in due course, maker's opinion testimony as to market value of tractor, if error, held not prejudicial.**

In action on note of buyer of tractor by holder in due course, maker's opinion testimony as to market value of tractor, if error, *held* not prejudicial.

Somerville, J., Anderson, C. J., and Gardner, J., dissenting.

### On Rehearing.

**6. Bills and notes 509—In action by assignee on note given by buyer of tractor, admission of copy of mortgage on such tractor in favor of plaintiff, as tending to show notice to plaintiff of defect in note, held prejudicial error.**

In action by assignee of note given by buyer of tractor, against maker, admission of copy of mortgage on such tractor in favor of plaintiff as tending to show notice to plaintiff of defect in note *held* prejudicial error.

Thomas, Miller, and Bouldin, JJ., dissenting.

Appeal from Circuit Court, Perry County; S. F. Hobbs, Judge.

Action by the Ashville Savings Bank against J. H. Lee. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The Ashville Savings Bank brought its suit against J. H. Lee, and the cause was tried on count D of the complaint, which declares on a promissory note, and alleges that the plaintiff was a holder in due course. To this complaint there were three pleas—plea 3 alleging payment, plea 9 alleging an accord and satisfaction, and plea 12 alleging accord and satisfaction.

The evidence disclosed that one Elliott, designated herein in various places as the Elliott Tractor & Truck Company and Elliott Motor Company, and Kyle Elliott, sold a tractor, plow, and some other implements to the defendant, J. H. Lee, through agents in Perry county. A negotiable note was taken payable to Bice and Redding, the local agents, for the sum of $1,227.50, dated May 15, 1920, and due November 1st, after date. It was properly indorsed by the payee Bice & Redding, and by Elliott, and transferred to the plaintiff before maturity for a valuable consideration.

J. H. Lee, the defendant, testified on his own behalf, and in the course of the testimony stated that he had agreed with Elliott that the sale be canceled and that he had turned the tractor over to Elliott with the understanding that he was to take up this note and return it to him; that he had prior to that time received a letter from the president of the bank, Herring, saying the note was due, and wanting witness to pay it, and that was all he could remember that was in the letter. Some time after the note sued on was given, another note for part of the purchase price of the tractor in the sum of $1,241.35 was executed, and after the tractor was returned Elliott returned this note to Lee, and at the same time wrote Lee that the other note (the one sued on) had been sold, and he (Elliott) would take it up with the purchaser and return it to Lee as soon as he could secure it.

There was no testimony indicating that Lee knew anything about the market value of tractors or that he had any knowledge of what the tractor in question was worth, and during the course of his testimony the defendant's counsel propounded to Lee this question, "In your opinion what was the reasonable market value of that tractor at Hamburg, Ala., or Marion, Ala., at the time you shipped it back to the Elliott Tractor & Truck

Company people?" The plaintiff objected to this question on the ground that the witness was not shown to be qualified, and that it is not shown that the witness knows the value of tractors or of this tractor, and on the further ground that it called for immaterial, incompetent, and irrelevant testimony. The court overruled the objection, and the plaintiff excepted. In answering this question, the witness stated, "$1,800."

The two material witnesses in this case, on whose testimony the questions involved herein are to be decided, were Kyle Elliott, who was a witness on behalf of the defendant, and James L. Herring, who was a witness on behalf of the Ashville Savings Bank, the plaintiff, and was president of plaintiff corporation. The material part of Elliott's testimony, so far as it is pertinent to the issues here involved, was substantially as follows:

"While negotiations were being had between Elliott and Lee regarding a return of the tractor, I was in the bank and talked to Judge Herring at one time about Mr. Lee making some objection about the tractor or rather wanting to return it, and I made a statement to him that I thought that the best thing I could do; that I was going to get the tractor back. I think in the course of the conversation I made the statement that I would take the note up and get the tractor back and sell it, and take up the papers, and to this I don't know that Judge Herring said anything. I am under the impression that he made the remark that it might be a good idea for you to do that, or it might be the proper thing for you to do. If Judge Herring made any objection to it, I did not hear it. I had given a mortgage on both tractors to the Ashville Savings Bank. After that tractor got back to Gadsden, I put it down in place in the Cassells building. Judge Herring came down there, and I showed him that tractor; I just referred to it and made reference to it that that was the Lee tractor and I had gotten it back. I did not tell him that was his tractor, or words to that effect. I said that was the Lee tractor. So far as I know, it stayed in my place of business until I left there. After this tractor was turned over to me by Mr. Lee, I made a payment on the note, but I do not recall at what time the payment was made."

On cross-examination, this witness further testified:

"I did not ever tell Judge Herring that that tractor was delivered to him in payment of this note. He never did at any time agree or tell me that he would accept that tractor in full payment and satisfaction of that note. He never did at any time ever authorize me to get that tractor back from Lee in full settlement of that note, and he never did authorize me at any time to get the tractor back from Lee. At the time I got the tractor back from Lee the only indebtedness I had to the Ashville Savings Bank was by reason of my indorsement on the Lee note. I never did tell Judge Herring at any time to take that property that was down there in the Cassell's building and apply any of it as a payment on this Ashville Savings Bank note. I do not know what was done with the tractor

after it was placed in my place of business at Gadsden. I never did sell it myself. It was still there when I left so far as I know. I do not know who has it now. I do not know that it came into the possession of Judge Herring. It had not come into his possession when I left there. The last I know of it was in the Cassells building with a landlord's lien on it for the rent on that building and the rent had not been paid. At the time I discounted this Lee note to the Ashville Savings Bank they held another note against me. When I discounted the Lee note to Judge Herring for the Ashville Savings Bank, they surrendered that other note that they held against me, and they canceled all the indebtedness that the Ashville Savings Bank had against me—that represented a complete settlement of any transactions with the Ashville Savings Bank up to that time."

J. L. Herring testified for the plaintiff as follows:

"I bought the note in question acting for plaintiff before its maturity for a valuable consideration [and testified about the credits that were placed on the note]. That on or about the last day of November, 1921, Lee wrote a letter to the bank making some complaint, and I handed the letter to Elliott, and he read it and replied that Lee had made some complaint about a harrow, and that he (Elliott) was going to make it good. That some time after that I saw Elliott and asked if he had done anything about that tractor, and my recollection is that he replied he had not. A little later, around Christmas or immediately after New Year, I spoke to him again, and he said he believed he would just come down here or go down there and get the tractor and pay the note off himself. That was the sum and substance of the conversation. To that I made no reply, so I never heard anything else about it, and I don't think I talked to Mr. Elliott any more about it for some two or three months. Along in the spring of the year about March somewhere, or that neighborhood, I was down at his place of business one day, and he pointed out the tractor and said, 'That is that Lee tractor,' or something like that, enough to convey the information to me that he had it back. I think that perhaps I was down there one other time, maybe 60 or 90 days after that. I don't recall dropping in there more than twice in 5 or 6 months. After that tractor got back to Gadsden, neither I nor any other officers for the Ashville Savings Bank ever exercised any acts of ownership or possession from any standpoint over that tractor."

At the conclusion of the evidence the plaintiff requested the general affirmative charge in its favor, which the court refused to give. The court also gave the following written charge for the defendant:

"If you are reasonably satisfied from the evidence that, after the Ashville Savings Bank became the owner of the note sued on, the said bank, through its president, James L. Herring, assented to an agreement between Elliott and the defendant that the tractor, for the purchase price of which the note in suit was given, should be returned by defendant to Elliott in full satisfaction of the said note, you should return a verdict for the defendant."

Goodhue & Lusk, of Gadsden, for appellant.

Payment of a negotiable instrument must be made to the holder or his authorized agent. 8 C. J. 464, 598; Slaughter v. Green, 205 Ala. 250, 87 So. 358; Snead v. Barclift, 2 Ala. App. 297, 56 So. 592; Sherrill v. M. & M. Bank, 195 Ala. 175, 70 So. 723. There was no evidence or contention of express authority, and no agency by implication or estoppel. 2 C. J. 432, 435; Hill v. Helton, 80 Ala. 528, 1 So. 340; 21 R. C. L. 856; Thompson, v. Atchley, 201 Ala. 398, 78 So. 196. The burden was upon defendant to establish the agency of Elliott to compromise the indebtedness. 2 C. J. 923; Cobb v. Malone, 91 Ala. 388, 8 So. 693. Where the facts are such that all reasonable conclusions to be drawn therefrom are the same, the question is for the court. Western Union v. Perry, 3 Ala. App. 247, 56 So. 824; Amer. Lbr. Co. v. Love, 20 Ala. App. 45, 100 So. 623; Allen v. Southern Coal Co., 205 Ala. 363, 87 So. 562. The certified copy of the mortgage admitted in evidence was irrelevant and immaterial; it could not be construed as notice to plaintiff. Code 1923, §§ 6861, 9082; Elmore v. Avant, 189 Ala. 418, 66 So. 509; Driver v. Fitzpatrick, 209 Ala. 34, 95 So. 466; Jones v. Spear, 204 Ala. 110, 85 So. 471. The special charge given for defendant was error. 38 Cyc. 1659; Singer v. Belgart, 84 Ala. 519, 4 So. 400; Williamson v. Tyson, 105 Ala. 644, 17 So. 336; Davis v. Davis, 93 Ala. 173, 9 So. 736.

C. C. Johnston, of Marion, and Pettus, Fuller & Lapsley, of Selma, for appellee.

The question of agency or ratification was for the jury. 21 R. C. L. 820.

SOMERVILLE, J. [1] The evidence shows without dispute that the plaintiff bank is a holder in due course of the note sued on. The question for decision is whether the defense of accord and satisfaction was supported by the evidence. That defense depended upon proof, to be made by the defendant, that Elliott's transaction with defendant, involving the cancellation of the purchase and sale of the machinery, the return of the tractor by defendant to Elliott, and Elliott's undertaking to return the two purchase-money notes to defendant, was in the capacity of *agent for the plaintiff bank.* And defendant's contention is that the testimony of Elliott, on his direct examination, tends to show, by reasonable inference, "that Elliott was authorized by the bank to take the tractor back, and the bank would look to its customer, Elliott, and not to Lee for payment of the note," and, further, "that the bank had a mortgage on the tractor, worth $1,800 when returned, and that it [the bank] authorized Elliott to take possession of the tractor for the bank, which Elliott did, and that the bank afterwards got the tractor and sold it."

Very clearly Elliott cannot be held to have been the agent of the bank by estoppel, since Elliott did not profess to represent the bank, and defendant had no reason to believe, and in fact no belief, that Elliott was acting other than for himself. It is clear also that there was no express authorization of agency. It results, therefore, that defendant must rely upon an agency by implication from the conduct and mutual dealings of the alleged principal and agent with respect to the transaction in question.

"It is often difficult to determine upon general principles whether any agency exists; rather it must be determined from the facts and circumstances of the particular case; and, if it appears from such facts and circumstances that there was at least an implied intention to create the relation, it will by implication be held to exist." 2 Corpus Juris, 436, § 32.

"Agency, like any other controvertible fact, may be proved by circumstances. It may be inferred from previous employment in similar acts or transactions; or from acts of such nature, and so continuous, as to furnish a reasonable basis of inference, that they were known to the principal, and that he would not have allowed the agent so to act unless authorized. In such cases, the acts or transactions are admissible to prove agency. But, in order to be relevant, the alleged principal must, in some way, directly or indirectly, be connected with the circumstances. The agent must have assumed to represent the principal, and to have performed the acts in his name and on his behalf." Hill v. Helton, 80 Ala. 528, 533, 1 So. 340, 344.

[2] Apart from the principle of estoppel, operating in favor of a third party who has relied upon the appearance of agency for which the putative principal is responsible, the relation of principal and agent arises solely from the mutual intention of the parties to create such a relation; that is, to authorize one to act for and in behalf of the other, so as to bind the other by his acts. 2 Corpus Juris, 432, § 26.

[3] A majority of the court, composed of Justices SAYRE, THOMAS, MILLER, and BOULDIN, are of the opinion, and so hold, that whether or not Elliott was the authorized agent of the plaintiff bank, and was acting for and bound the bank as his principal, when he took back the tractor and agreed with defendant to release and deliver up the note in question, was a question for the jury under the evidence, and that the general charge for defendant was properly refused.

[4, 5] The majority hold, also, that the trial judge properly instructed the jury as set out in the statement of the case, supra, that the allowance of defendant's opinion testimony as to the market value of the tractor, if error, was error without injury, not affecting the merits of the issue, and that the judgment of the trial court should be affirmed.

The writer, with whom concur the CHIEF JUSTICE and Justice GARDNER, dissents as expressed in the opinion below.

Affirmed.

SAYRE, THOMAS, MILLER, and BOULD-IN, JJ., concur.

SOMERVILLE, J. I have given very thorough consideration to the testimony of the defendant's witness Elliott, and of the plaintiff's witness Herring, and I have been driven to the clear conclusion that it cannot, upon any reasonable interpretation or understanding, support the implication of authority, given by the bank to Elliott to release and surrender the note held by it to defendant upon defendant's delivery of the tractor to Elliott. The bank was a creditor of defendant as maker of the note, and of Elliott, contingently, as its indorser. Certainly, Elliott's statement to Judge Herring that he thought the best thing he could do would be to get the tractor back, and that he would get it back and *sell it* and *take up the papers,* could not, by the mere silence or acquiescence of Judge Herring, constitute Elliott the bank's agent in that undertaking. It is clear that neither of them contemplated such a thing, and indeed the very language of *Elliott's suggestion* —to get the tractor back and *sell* it, and to "take up" the note or papers—refutes the implication of an intended agency to release the obligations of the note. To hold otherwise would be to say, in effect, that a jury question as to agency may arise in every case where a creditor discusses with one joint debtor or his surety any plan of his for the liquidation of the debt, if thereafter the debtor or surety makes arrangements with others for the execution of his plan.

To "take up" a note means to discharge its obligation to the holder, and certainly not to release the holder's claim against the maker without payment of the amount due. The bank in this case had no authority over either the maker or the indorser of the note as to his or their mode of procedure, either in their contractual dealings with each other, or in their handling of the note held by the bank. The bank could neither consent to, nor dissent from Elliott's plan of procedure, in any legal sense of those terms, because as the mere payee of the note it had nothing to do with the mutual relations and obligations of Lee and Elliott. The plain implication is that Elliott was suggesting action on behalf of himself *and of Lee* in order to take care of the overdue note; and the reason for stating the plan to Judge Herring was presumptively the natural one under the circumstances, simply to assure an active creditor that something was being done to meet and satisfy the obligation.

But, apart from the utter insufficiency of the evidence to generate any implication of agency, as a matter of purely logical aptitude, there is a thoroughly well-settled presumption of law, prima facie, that one who has not the possession of a written security belonging to his putative principal has no authority to receive payment thereof, nor to release the debtor from his obligation. Smith v. Kidd, 68 N. Y. 130, 23 Am. Rep. 157; Security Co. v. Graybeal, 85 Iowa, 543, 52 N. W. 497, 39 Am. St. Rep. 311; Campbell v. Gowans, 35 Utah, 268, 100 P. 397, 23 L. R. A. (N. S.) 414, and note, 19 Ann. Cas. 660; Neigell v. Gregg, 161 Wis. 413, 154 N. W. 645, L. R. A. 1916B, 856, and note, 860; 2 Corpus Juris, 624. And it must be noted in the instant case that Elliott had never been either a general or special agent of the plaintiff bank, but a *debtor* merely; and that, being *defendant's* witness, he testified without objection that Judge Herring never did agree with him to accept the tractor in payment of the note, and never did authorize him to get the tractor back from Lee in settlement of the note, nor to get it back at all.

Another fact of prime significance is that, *before* Elliott had the conversation with Judge Herring, Lee, according to his own undisputed testimony, had already canceled the sale transaction by agreement with Bice and Redding, Elliott's local agents at Marion, and by their order the tractor was left at Lee's barn for them to get and sell. Again, when afterwards Elliott wrote to Lee to ship the tractor to Gadsden, with a promise to return his notes upon receipt of the bill of lading, and the shipment was made, Lee knew that the note in suit, a negotiable instrument, was held by the bank, and his shipment of the tractor was plainly upon his faith in *Elliott's* getting the notes and returning them, and not upon any notion that the bank had agreed to release *him* from liability, or that Elliott was representing the bank for any purpose whatsoever; for he had neither knowledge nor belief as to such a supposition, and Elliott never at any time assumed or pretended that he was acting for the bank, or in any capacity other than as vendor of the tractor merely.

It is worthy of consideration, also, that the bank could gain no advantage by releasing the principal debtor from liability on the note, the person upon whose credit it relied when it bought the note, and the implication that it intended to do so is contrary to common sense and common prudence under the circumstances.

Again, Elliott's promise to Lee was to *return to him the notes* on receipt of the bill of lading for the tractor, a departure from the plan stated to Judge Herring, viz., to "get the tractor back and sell it and *take up* the papers," so radical as to forbid the implication of authoritative association between them.

But, regardless of the numerous other features of the evidence to which we have adverted, a simple analysis of the conversation between Elliott and Herring is enough to condemn the implication authorized by the majority decision. It is not contended, and I think cannot be contended, that Elliott's mere statement of his purpose to take the tractor back and sell it and pay off the note could in

itself authorize a finding that he was thereby made the *agent of the bank* in that behalf, *with authority to release Lee*. There was no proposition to release anybody. How then can Judge Herring's reply, if indeed he made any reply, that "it *might be a good idea* for you [Elliott] to do that," be tortured into what the majority of the court say is its legal equivalent, viz. "I authorize you as agent on behalf of the bank to take back the tractor and to release Lee from his obligation as maker to pay the note"? Surely this is a violent, and dangerous, and utterly unwarranted paraphrase of a wholly insignificant remark. Even judicial alchemy cannot accomplish such a transmutation.

In another aspect of the case, the bank was clearly under no duty to the maker, this defendant, to warn him that Elliott had no authority to surrender the note to defendant without its prior payment to the bank. Indeed, there was nothing in the conversations between Elliott and Judge Herring to indicate that Elliott intended to overreach or mislead the defendant by assuming authority to release him from liability to the bank without due payment.

Nor do we find anything in the evidence to support a finding that the plaintiff bank afterwards ratified Elliott's agreement with defendant to return the notes to him upon his surrender of the tractor, whether by express action or by the acceptance of the tractor with a knowledge of the circumstances of its return to Elliott. There is nothing to show that the bank received, or agreed to receive, the tractor, or that Elliott intended to turn it over to the bank, in payment of, or as a credit on, the note. The positive evidence is all clearly to the contrary.

I have expressed my dissent from the decision of the majority with thus much of earnestness and effort because of its injustice in this case, but also because in my opinion it sets a radical and dangerous precedent.

On the whole evidence I think the plaintiff was entitled, as a holder of the note in due course, to recover the amount due upon it, and that there was no evidence to support the pleas of accord and satisfaction.

I think that the general affirmative charge for plaintiff was erroneously refused, and that the judgment should be reversed and the cause remanded for another trial.

ANDERSON, C. J., and GARDNER, J., concur in these dissenting views.

## On Rehearing.

SOMERVILLE, J. The bill of exceptions in this case shows that at the conclusion of Elliott's testimony the defendant offered in evidence a certified copy of a chattel mortgage dated Gadsden, Ala., November 3, 1919, to the Ashville Savings Bank covering two tractors, certified as a correct copy of the record in his office by the judge of probate of Etowah county, Ala. It is further recited:

"The plaintiff objected to its introduction because it had not been properly identified, the execution had not been shown, and it was immaterial, irrelevant, and incompetent, has no bearing on this case and no connection with it, and the loss of the original has not been shown, and no notice had been given to any body to produce the original. The court sustained this objection, and counsel for defendant stated to the court: 'We offer this record of the mortgage for the limited purpose of showing as a fact that there was on record in Etowah county, Ala., an unsatisfied mortgage. in favor of Ashville Savings Bank given by Kyle Elliott on this particular tractor; not that the mortgage was in existence or that it had not been paid, but merely to show what the records in Etowah county showed in connection with the bank mortgage on the property. In other words, I take it that this record of ·this mortgage in Etowah county unsatisfied might carry with it some notice, one way or the other.' "

It further appears that the court then overruled plaintiff's objections, and admitted the copy of the mortgage in evidence solely for the purpose of showing *notice* to the plaintiff bank.

It appears without dispute that this chattel mortgage and the note which it secured were paid and completely extinguished by the transfer to the plaintiff bank of the note in suit and the payment in cash of the difference.

In his oral charge to the jury, the trial judge submitted to them the question of the bank's good faith in the purchase of the note, and whether the bank had notice of any defense the defendant would have had against Elliott, at the time it purchased the note.

[6] The copy of the mortgage was improperly admitted in evidence because it was not relevant to any issue in the case, and was not competent evidence of notice to the bank of any defect in the note. Perhaps its admission might have been regarded as harmless error but for the fact that the trial judge admitted it as *tending to show such notice*. And, as there was no other evidence the jury could have regarded as probative of such notice, the probability is that they accepted the trial judge's indorsement of its relevancy and value in that behalf, and it may well have been in fact the inducement to their verdict.

The error of its admission was insisted upon by appellant on the original hearing, but its importance was overlooked, and it received only casual consideration.

A majority of the court are now of the opinion that the ruling complained of was erroneous, and, under the circumstances, prejudicial to the plaintiff.

It results that the application for rehearing must be granted, the judgment of affirm-

ance set aside, and the judgment below reversed, with remandment for another trial.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

THOMAS, MILLER, and BOULDIN, JJ., dissent.