IDZIK, Respondent, v. REDDICK and others, Appellants.*

*May 4—June 7, 1960.*

* Motion for rehearing denied, without costs, on October 4, 1960.

For the appellants there were briefs and oral argument by *Vaughn S. Conway* and *Kenneth H. Conway,* both of Baraboo.

For the respondent there was a brief by *Snyder, Mantyh & Arndt* of Milwaukee, and oral argument by *E. H. Snyder.*

DIETERICH, J.  On or about February 19, 1954, the plaintiff answered the following ad contained in the Portage Daily Register and Democrat under the heading of "Business Opportunity;"

"Man & wife desiring to increase their income.  You can own a noncompetitive spare-time business with a small in-

vestment—then with the assistance of a substantial national organization, expand to a full-time, permanent, dignified business within one year.

"You will operate this business from your home without employees or office expense.

"The couple selected in your area would perform an important function in the rapidly growing national program of this company. To qualify you must have a character and credit reputation that bears rigid investigation and be willing to make a fully secured investment of $1,250 to $4,000. This is not a vending operation, but a good, sound business that is going nationally. In reply please state address and phone number. Write P. O. Box 11, Zone 13, Wauwatosa, Wisconsin."

The ad was placed in the paper by Reddick with the knowledge and consent of Hastings. The ad was paid for by Hastings.

The defendant Reddick personally called upon the plaintiff at his home and presented his business card upon which was printed "Hastings Distributing Company, 6100 West Bluemound Road, Milwaukee, Wisconsin . . . E. Lyle Reddick, state supervisor. . . ." The testimony discloses that Reddick stated that he represented Hastings Distributing Company.

On March 15, 1954, Reddick repeated in substance the representations contained in the newspaper ad—if the plaintiff purchased the "Minut-Bun machines," Reddick would see to it that all of the machines were placed in retail establishments; the business operation was to be nationally advertised; the plaintiff's investment was secured by money-back guarantee; the plaintiff was to be given an exclusive area franchise, this agreement to be subsequently reduced to writing by an attorney. None of the machines were placed in retail establishments by or through either of the defendants. There was no advertising of the business operation whatever, and no written exclusive area franchise was ever

given to the plaintiff. The plaintiff's source of profit was the difference between his cost of the sandwich materials and the retail selling price to establishments in which the machines were placed.

On March 15, 1954, the defendant Reddick wrote up the order for five Minut-Bun machines. This was a printed order entitled "Hastings Distributing Company since 1932," order No. 3665, and disclosed that the price was $497.50 upon which there was paid $150, leaving a balance of $347.50 due to be paid on delivery of the machines.

The down payment in the amount of $150 under purchase order No. 3665 was by check dated March 15, 1954, made payable to E. Lyle Reddick and cashed on March 16, 1954, by Reddick.

Plaintiff received a letter dated March 16, 1954, from defendant S. J. Hastings, which reads as follows:

"Thank you for your order of five Minut-Bun machines and the deposit of $150, paid to our independent distributor Mr. Reddick. He informs me that he will deliver the machines and collect the balance due of $347.50 within the next few days.

"We welcome you in the happy Minut-Bun products family and wish you much success. You are now a Minut-Bun distributor and will be entitled to buy your meats direct from the packer at wholesale prices. Minut-Bun meats products is a national operation. You will secure the highest quality prepared meats ready to serve at the lowest possible prices. I could go on and on explaining the advantages of being associated with a nation-wide operation of this kind but space is limited.

"If there is any information you desire that the Minut-Bun distributor has not fully explained, please feel free to write to this company, attention Mr. Reddick. This is his exclusive operation in Wisconsin and I am sure he can answer your questions.

"Thank you again for the confidences you have placed in our products, and assuring you with some effort on your part you will be very successful."

On March 29, 1954, plaintiff purchased five more Minut-Bun machines at the same price and gave Reddick another check for $150. Plaintiff made out a check to Hastings Distributing Company dated March 30, 1954, in the sum of $413.30. This check was cashed by Hastings on April 5, 1954.

Plaintiff received the following letter from S. J. Hastings dated May 14, 1954:

"Thank you for the order given our independent distributor, Mr. Reddick, for five more Minut-Bun bars.

"Please advise by return mail if we should ship these machines C.O.D. or if you are mailing us a check for the balance of $347.50.

"I wish you much success in your Minut-Bun operations and if we can be of any assistance to you, please write."

On May 19, 1954, plaintiff made out another check to Hastings Distributing Company in the sum of $347.50, and it was cashed by Hastings on May 24, 1954. On the same date plaintiff sent the following letter to Mr. Hastings:

"Inclosed find check for $347.50, representing balance of payment for five Minut-Bun bars.

"Please note my address is now 1119 West Wisconsin Street, Portage. . . .

"Please advise Mr. Reddick of this shipment as I would like these machines and those previously purchased to be located as soon as possible."

The record discloses that the defendant Hastings testified that he had not used the order blank for a number of years; and that the order blank exhibited by the plaintiff was used only as scratch pads and had not been used in his business at any time during February, March, and April, 1954. He also testified on direct examination that he was sure the defendant Reddick used a standard sales-order book which could be secured at any stationery house. However, on an adverse examination in another action pending in the civil

court, the defendant Hastings testified that an order blank identical to plaintiff's order No. 3665, dated March 15, 1954, was a regular purchase order form used by the Hastings Distributing Company. This was order No. 3670 and was introduced into evidence in this case.

The record further discloses that the plaintiff made numerous telephone calls to the Hastings Distributing Company, asked for and spoke to the defendant Reddick; and although the defendant Hastings denied that defendant Reddick had his office at the Hastings Distributing Company, he admitted that defendant Reddick received telephone calls there.

In July, 1954, Idzik telephoned the defendant Hastings and demanded that the sales of the 10 machines be rescinded and his money returned to him in accordance with the money-back guarantee. The defendant Hastings denied responsibility for the sales, representations, or guarantee and refused to accede to the plaintiff's demand.

The sole issue in this case resolves itself into not one of agency, but one of apparent authority of the agent.

In *McDermott v. Jackson* (1897), 97 Wis. 64, 72, 73, 72 N. W. 375, this court said:

"If a principal so conducts his business, either through negligence or otherwise, as to lead the public to believe that his agent possesses authority to contract in the name of the principal, such principal is bound by the acts of such agent, within the scope of his apparent authority, in so contracting with any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him, even though such agent have express secret instructions to the contrary. . . . Did the third person, because of appearances for which the principal was responsible, believe, and have reasonable ground to believe, that the agent possessed power to act for the principal in the particular transaction? If such

third person was, in the exercise of reasonable prudence, justified in believing that the agent possessed the necessary authority, then the principal is responsible to such third person the same as if the agent possessed all the power he assumed to possess."

This rule has subsequently been reiterated in *Garlick v. Morley* (1911), 147 Wis. 397, 132 N. W. 601; *Freeman v. Dells Paper & Pulp Co.* (1912), 150 Wis. 93, 135 N. W. 540, and is the accepted rule of law in this country. 21 R. C. L., Payment, p. 56, sec. 53; *Weigel v. Gregg* (1915), 161 Wis. 413, 154 N. W. 645; *Voell v. Klein* (1924), 184 Wis. 620, 200 N. W. 364.

The contention of the defendant Hastings is that Reddick was not his agent, that Reddick had no authority to hold himself out as an agent or a representative of the Hastings Company, and that Hastings did not commit any act which would lead a reasonable man to believe that Reddick was his agent.

In this case Hastings offered as proof an unexecuted contract dated April 12, 1954, which reads in part as follows:

"It is understood that you are to make all your contracts with your customers and distributors and that all such contracts are to be made upon your own responsibility and that I am in no way to be responsible for performance of any contract made between you and any of your customers or distributors.

"It is agreed that you are to pay for all machines upon delivery to your customers and that the proceeds received from sale of machines is to be my property and is to be paid to me within twenty-four hours after date of delivery to your customer."

We agree with the trial court's determination that this document dated after the transaction for Minut-Bun machines is not relevant to establish an independent-contractor relationship in March of 1954.

The evidence in this case establishes that S. J. Hastings, d/b/a Hastings Distributing Company, conducted his business in such a manner that the plaintiff, Donald Idzik, in the exercise of reasonable prudence was justified in believing and had reasonable ground to believe that Reddick possessed the necessary power and authority as agent of the Hastings Distributing Company to enter into the oral contract.

Every writing incidental to the transaction had the name of Hastings Distributing Company imprinted thereon. The business card of the defendant Reddick identified him as a state supervisor for Hastings Distributing Company. This card was the same in color, design, and format as the business cards used by the defendant Hastings. All of the invoices and orders were the printed forms of Hastings Distributing Company. All of the shipping invoices designated Hastings Distributing Company as the shipper. Two payments were made by check directly to the defendant Hastings Distributing Company, a second one only after a written demand for payment had been made on the plaintiff by the defendant Hastings. The telephone calls had been made direct to Hastings Distributing Company and the plaintiff spoke to Reddick at the Hastings Distributing Company and Hastings admitted that Reddick received the telephone calls at his company.

There was no attempt on the part of Hastings to inform the plaintiff that the defendant Reddick was not his authorized agent except in two letters directed to the plaintiff wherein the defendant Hastings referred to the defendant Reddick as an independent distributor. In one letter the defendant Hastings referred to the defendant Reddick as an independent distributor, but in the same letter and on the same letterhead demanded that the plaintiff make payment of the balance due directly to Hastings Distributing Company.

The judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.