194 Va. 148 (1952)
PAINTERS AND PAPERHANGERS LOCAL UNION NO. 1018, A.F. OF L., AN ASSOCIATION, AND OTHERS
v.
ROUNTREE CORPORATION AND EANES BUILDING CORPORATION.
Record No. 3972.
Supreme Court of Virginia.
September 10, 1952.
Beecher E. Stallard, Woll, Glenn & Thatcher and John R. Foley, for the appellants.
Sands, Marks & Sands, for the appellees.
Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and
1. Complainants filed their bill for an injunction to restrain defendant union and its agents from picketing complainants' premises. A union contractor started reconstruction of complainants' store but before the job was completed, the contractor's employees went on strike. Complainants then engaged a non-union contractor to finish the work and four days thereafter the union began picketing in front of complainants' premises. The picketing consisted of one picket at a time and was admittedly orderly and peaceful at all times. It did not obstruct entrance into or exit from the store, no effort was made to impede customers or to induce the workers to join the union, and there was no interference with their continuing to work. Complainants contended that communication was not the sole purpose of the picketing but rather it was intended to compel unionization as a condition to continued employment and was therefore unlawful. That contention was without merit for no such demand or even suggestion was made by defendants to complainants or to the contractor or his men, and the charge was not established by the evidence.
2. Under the facts of headnote 1, if the peaceful publication of the facts in an effort to unionize the workers resulted in economic pressure on the complainants, as employers of the workers, that result did not make the purpose unlawful or the picketing illegal. It cannot be said that picketing otherwise legal becomes illegal because of the possibility that as a result of it a person affected by it may do an unlawful act, unless the purpose of the picketing is to compel the doing of such an act.
3. It is not the public policy of the Commonwealth of Virginia to prohibit all picketing.
4. Under the facts of headnote 1, the picketing in question was lawful, and, that being true, it was not a basis for the assessment of damages against the defendants. One has no constitutional right to a remedy against the lawful conduct of another.
Appeal from a decree of the Law and Equity Court of the city of Richmond. Hon. Thomas C. Fletcher, judge presiding. The opinion states the case.
BUCHANAN
BUCHANAN, J., delivered the opinion of the court.
Rountree Corporation and Eanes Building Corporation, complainants below, filed their bill for an injunction to restrain the union and its agents, defendants below, from picketing the complainants' premises. The trial court refused to award the injunction, but upon presentation of the bill and defendants' answer to two justices of this court (Code 1950, | 8-618) a temporary injunction was granted on the ground that the picketing was being carried on for an unlawful purpose. Afterwards depositions were taken and a decree was entered by the trial court holding that the picketing was unlawful and that the plaintiffs were entitled to such damages as they might show they had sustained on account thereof. Later a jury, empanelled to assess the damages, returned a verdict in favor of Rountree Corporation for $1,587.18 upon which judgment was entered and this appeal followed.
The defendants make eleven assignments of error but they present only these two issues: (1) Whether the picketing, which was concededly peaceful, was for an unlawful purpose and therefore properly enjoined; (2) if so, whether the damages allowed were adequately proved.
There is little dispute about the facts. Eanes Corporation owned premises 111-115 West Broad street, in Richmond, in which Rountree Corporation, its lessee, conducted a retail furniture *150 business. These premises were badly damaged by fire on November 12, 1948. Reconstruction and repairs were made and during their progress business operations were conducted in part and it was planned to reopen on a complete basis on May 10, 1949. When the picketing began on April 21, only painting and electrical work remained to be done.
The painting work had been let to O. A. Walker, who employed union labor and who began work the latter part of March, 1949. On April 8 Walker's painters left the job and did not come back. The next day Eanes, president of the complainant companies, was informed that they were on strike. He then called Wilton B. Dickerson, inquired whether he operated a non-union shop, and on being advised that he did, Eanes engaged him to finish the painting. Dickerson began work on April 17 and there was no interference with his work after he took over the job.
In the meantime, the defendant Reynolds, business agent for the union, had written a letter to Eanes, dated March 31, 1949, stating:
"We have been informed that your company is anticipating doing some painting and decorating. It would be greatly appreciated if you would consider using Union labor. My telephone number is 2-6837 and I will be glad to render any service possible."
On April 21, 1949, four days after Dickerson and his men began work, the union began picketing in front of the Rountree premises. This picketing consisted of one picket at a time, the defendant Rowe being one of them, walking back and forth on the sidewalk in front of the store, carrying a sign reading: "This painting is unfair to the Painters and Paperhangers Local Union No. 1018, A.F. of L., member of Richmond Trades and Labor Council."
This picketing continued until May 6, 1949, when it was enjoined as stated. Admittedly it was orderly and peaceful at all times and in all respects. It did not obstruct entrance into or exit from the store or the use of the street and no effort was made to impede customers. No attempt was made to have Dickerson sign a union contract, nor to induce the painters to become members of the union, nor to interfere with their continuing to work. *151 
For about two days after the picket line was established no electricians appeared on the job. The electrical contractor informed Eanes that his men were not permitted to cross the picket line. The contractor testified that after two days he got another crew of union men who crossed the picket line and resumed the work. He estimated the picket line caused a delay of ten days in the electrical work, including two days when he had two men, three days in acquainting the new men with the work already done and five additional days of work with a short crew.
There was testimony for the complainants to the effect that a delay of 30 days was experienced in completing the repairs and fully opening for business, of which ten days were chargeable to the defendants as a result of the picket line.
Prior to the picketing the complainants had never been engaged in any controversy with the union or its members; and likewise there was no controversy between the painting contractor or the electrical contractor and their employees, and no demand of any kind had been made on the complainants by the union. The only communication between the union and the complainants was the letter of March 31, above quoted.
Reynolds, the business agent of the union, testified that the purpose of the picketing was "To let the friends of organized labor and the sixteen thousand members that we have here in Richmond and vicinity know who is fair and unfair to us." On cross-examination he was asked what he wanted to accomplish by the picketing, and he said, "I wanted them sixteen thousand Union boys and ladies, and the sympathizers of organized labor in the city of Richmond and vicinity, to know that that painting was being done non-union."
In their answer to the bill, the defendants said they desired to unionize the non-union painting contractor and that the picketing had a twofold purpose -- to let friends of the union know that a non-union contractor was doing the work and to let members of the Richmond Building Trades Council and all organized labor of the vicinity know that fact.
In a written motion to dissolve the temporay injunction the defendants stated: "The purpose of the said peaceful picketing at all times has been to inform the public that non-union painters were being employed to do the painting on the complainants' *152 premises to the end that plaintiff's employees or some of them may be unionized, that is, they or some of them become members of defendant union."
The defendants argue that the picketing was for the sole purpose of communication, and no more than an exercise of their right to freedom of speech, guaranteed by the First and Fourteenth Amendments of the Federal Constitution and by the twelfth section of the Virginia Bill of Rights.
The complainants contend that communication was not the sole purpose of the picketing but that the true purpose was to compel complainants to get rid of the non-union painters, employees of Dickerson, an independent contractor, or to compel those employees to join the union as a condition of continued employment. Such purpose it is argued was unlawful and hence the picketing was properly enjoined under the doctrine of Giboney Empire Storage, etc., Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.ed. 834, and similar cases.
In Edwards Commonwealth, 191 Va. 272, 60 S.E.(2d) 916, we reviewed the picketing cases decided by the United States Supreme Court beginning with Thornhill Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.ed. 1093, and including the Giboney Case, as well as the three cases decided in May, 1950. We concluded from that review that the holding in the Thornhill Case
had not been departed from to the effect that a statute (or an injunction) which prohibits picketing for a lawful purpose, unaccompanied by the threat or the fact of force, and limited to truthful publication of the facts of a dispute, is invalid; that regulation of picketing by the State, through legislation or court action, must have a reasonable basis in preventing disorder, restraining coercion, protecting life or property, or promoting the general welfare.
We held in the Edwards Case that the part of section 3 of the picketing statute, Acts 1946, ch. 229, p. 391, Code 1950, | 40-64, which made it unlawful for a person not a bona fide employee of the business or industry being picketed to participate in any picketing with respect to such business or industry was invalid.
McWhorter Commonwealth, 191 Va. 857, 63 S.E.(2d) 20, involved a prosecution under section 1 of the same act for interference with the right to work by the use of insulting language. *153 The defendant there contended that the statute constituted an abridgment of the right of freedom of speech and was designed to end the practice of picketing. In upholding the validity of that section, we said:
"We see nothing in the section of the statute here under review which supports the assertion of the defendant that it was 'designed to end the practice, common to labor disputes, known as "picketing."' It does not prohibit 'peaceful picketing or peaceful persuasion' in connection with labor disputes which are protected under the constitutional guaranty of freedom of speech. American Federation of Labor Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.ed. 855." 191 Va. at p. 865, 63 S.E.(2d) at p. 24.
In Cafeteria Employees Union Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.ed. 58, cited in both the Edwards and McWhorter Cases, the court reversed an order enjoining the union from picketing at or near Angelos' place of business as being illegal restraint upon "the right of workers to state their case and to appeal for public support in an orderly and peaceful manner regardless of the area of immunity as defined by state policy." That case also held that the use of the words "unfair to organized labor" is "part of the conventional give-and-take in our economic and political controversies" and "is not to falsify facts." See also on this point Blossom Dairy Co. International Brotherhood of Teamsters, 125 W.Va. 165, 23 S.E.(2d) 645.
In American Federation of Labor Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.ed. 855, also cited in the Edwards and McWhorter Cases, an injunction had been granted against picketing on the ground that "peaceful persuasion" was forbidden because those who were enjoined were not in Swing's employ. It was held that such a ban of free communication was inconsistent with the guarantee of freedom of speech; that "The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ." 312 U.S. at p. 326, 61 S.Ct. at p. 570.
In Bakery and Pastry Drivers, etc. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.ed. 1178, it was said that "one need not be in a 'labor dispute' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor *154 matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive." 315 U.S. at p. 774, 62 S.Ct. at p. 818.
The principles announced in the cases cited are, we think, controlling in the case in judgment.
Clearly the picketing was conducted in a manner that offended no established rule and was legal unless it was for an unlawful purpose.
[1, 2] The purpose of the picketing avowed in the answer and in the motion to dissolve was to unionize the non-union painting contractor and his employees. The evidence does not disclose a different purpose. The charge that there was a purpose to compel the complainants to discharge the non-union painters or to compel the painters to join the union as a condition of their continued employment is not established by the evidence. No such demand or even suggestion was made by the defendants to the complainants, to the contractor or to his men. If the peaceful publication of the facts in an effort to unionize the painters resulted in economic pressure on the complainants, as employees of the painters, that result did not make the purpose unlawful or the picketing illegal. It cannot be said that picketing otherwise legal becomes illegal because of the possibility that as a result of it a person affected by it may do an unlawful act, unless the purpose of the picketing is to compel the doing of such an act.
This that was said in Senn Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.ed. 1229, is applicable here: "The sole purpose of the picketing was to acquaint the public with the facts and, by gaining its support to induce Senn to unionize his shop. There was no effort to induce Senn to do an unlawful thing. There was no violence, no force was applied, no molestation or interference, no coercion. There was only the persuasion incident to publicity. * * *."
Building Service Employees International Union Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.ed. 1045, was cited in the Edwards Case as upholding an injunction against peaceful picketing because it was for the unlawful objective of having the employer coerce his employees' selection of a bargaining representative. It was there said that picketing is in part an exercise of the right of free speech, "But since picketing is more *155 than speech and establishes a locus in quo that has far more potential for inducing action or non-action than the message the pickets convey, this Court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity."
The court distinguished the Swing Case, pointing out that peaceful picketing for any lawful purpose was not prohibited by the decree under review, and that "Respondent does not contend that picketing per se has been enjoined but only that picketing which has as its purpose violation of the policy of the State. There is no contention that picketing directed at employees for organization purposes would be violative of that policy. * * * The injunction granted was tailored to prevent a specific violation of an important state law."
 The record here fails to disclose any violation of the picketing statute dealt with in the Edwards and McWhorter Cases; or any violation of the Right to Work statute (ch. 2, Acts 1947, extra session, p. 12; Code 1950, | 40-68 ff.) held valid in Finney Hawkins, 189 Va. 878, 54 S.E.(2d) 872; or violation of any other statute; nor do we think it violated a State policy. It is not the public policy of this State to prohibit all picketing. Only certain types are prohibited by the picketing statute referred to. By the 1952 amendment of that statute, Acts 1952, ch. 674, p. 1123, courts of equity were authorized to enjoin interference with lawful picketing when necessary to prevent disorder, etc.
 We hold that the picketing in question was lawful, and, that being true, it was not a basis for the assessment of damages against the defendants. "One has no constitutional right to a 'remedy' against the lawful conduct of another." Senn Tile Layers Protective Union, supra.
The decree appealed from is therefore reversed and final decree for the defendants will be entered.
Reversed and final decree.