Vogt, Inc., Respondent, vs. International Brotherhood of Teamsters, Local 695, and others, Appellants.*

*May 31—June 28, 1955.*
*January 12—February 7, 1956.*

* Motion for rehearing granted.

Upon appropriate conclusions of law, judgment was entered on November 9, 1954, permanently restraining defendants from picketing at the premises. Defendants appeal.

For the appellants there were briefs by *Padway, Goldberg & Previant,* attorneys, and *David Previant* and *David Leo Uelmen* of counsel, all of Milwaukee, and oral argument by *Mr. David Previant* and *Mr. Uelmen.*

For the respondent there was a brief by *Lamfrom & Peck* of Milwaukee, attorneys, and *Leon B. Lamfrom* and *Jacob L. Bernheim* of Milwaukee, and *Hilbert W. Dahms* of Oconomowoc of counsel, and oral argument by *Mr. Leon B. Lamfrom* and *Mr. Dahms.*

GEHL, J. In a memorandum opinion filed by the trial judge he stated his conclusion that the picketing had not been conducted for an unlawful purpose, but that it constituted a violation of sec. 103.535, Stats., which provides as follows:

"UNLAWFUL CONDUCT IN LABOR CONTROVERSIES. It shall be unlawful for anyone to picket, or induce others to picket, the establishment, employees, supply or delivery vehicles, or customers of anyone engaged in business, or to interfere with his business, or interfere with any person or persons desiring to transact or transacting business with him, when no labor dispute, as defined in subsection (3) of section 103.62, exists between such employer and his employees or their representatives."

Sec. 103.62 (3), Stats., provides:

"(3) The term 'labor dispute' means any controversy between an employer and the majority of his employees in a collective-bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives. Any organization with which either the employer or such majority is affiliated may be considered a party to the

labor dispute. The provisions of this subsection shall supersede any provision of the statutes in conflict therewith."

The question whether picketing as it is described in these statutes, but otherwise lawful, may be enjoined, has not been squarely presented to this court. Counsel for defendants contend that if sec. 103.535, Stats., is to be construed as authorizing such action it is invalid as depriving defendants of the right of free speech in violation of the federal and the state constitutions. We have held that if the picketing is conducted in violation of secs. 111.06 (2) (a) or 111.06 (2) (b), it is done for an unlawful purpose and may be enjoined. *Retail Clerks' Union v. Wisconsin E. R. Board,* 242 Wis. 21, 6 N. W. (2d) 698; *Christoffel v. Wisconsin E. R. Board,* 243 Wis. 332, 10 N. W. (2d) 197; *Wisconsin E. R. Board v. Retail Clerks Int. Union,* 264 Wis. 189, 58 N. W. (2d) 655. The United States supreme court has also recognized that picketing, if conducted for an unlawful purpose, may be prohibited by state statute. *Building Service Union v. Gazzam,* 339 U. S. 532, 70 Sup. Ct. 784, 94 L. Ed. 1045.

Sec. 111.06 (2), Stats., provides that it shall be an unfair labor practice for an employee individually or in concert with others:

"(a) To coerce or intimidate an employee in the enjoyment of his legal rights, including those guaranteed in section 111.04, or to intimidate his family, picket his domicile, or injure the person or property of such employee or his family.

"(b) To coerce, intimidate, or induce any employer to interfere with any of his employees in the enjoyment of their legal rights, including those guaranteed in section 111.04, or to engage in any practice with regard to his employees which would constitute an unfair labor practice if undertaken by him on his own initiative."

Counsel for plaintiff contend that the picketing was conducted in violation of these provisions and therefore for an unlawful purpose. The trial judge did not find facts which

would have supported a conclusion that either subdivision had been violated; he went no further than to find "that the purpose of the picketing was to induce the plaintiff's employees to organize and affiliate with defendant's [sic]" and rejected a finding requested by the plaintiff as follows:

"4. That the picketing of plaintiff's premises has been engaged in for the purpose of coercing, intimidating, and inducing the employer to force, compel, or induce its employees to become members of defendant labor organizations, and for the purpose of injuring the plaintiff in its business because of its refusal to in any way interfere with the rights of its employees to join or not to join a labor organization."

The testimony would not have supported a finding of the facts constituting a violation of either of the subsections. No threats were made against the plaintiff; no demands were made upon it. It does not appear that any of the defendants' representatives had even spoken to plaintiff's officers about their desire to organize its employees. There was no violence, no force, and no threat of force, no disorder or physical obstruction to plaintiff's property. There was no evidence that defendants' representatives had coerced or intimidated any of plaintiff's employees in their right to join or refuse to join either of defendant unions. There was only peaceful persuasion exercised by the carrying of a banner bearing a truthful legend.

Having concluded that the picketing was not conducted for an unlawful purpose we reach the question as it was stated in *American Federation of Labor v. Swing,* 312 U. S. 321, 323, 61 Sup. Ct. 568, 85 L. Ed. 855:

". . . is the constitutional guaranty of freedom of discussion infringed by the common-law policy of a state forbidding resort to peaceful persuasion through picketing merely because there is no immediate employer-employee dispute?"

The question was answered by the court in the affirmative. In that case the union had unsuccessfully tried to unionize Swing's beauty parlor. Picketing followed. Suit was brought

by Swing and his employees to enjoin the interference with the former's business. The United States supreme court considered that a permanent injunction granted by the state court rested on the latter's conclusion that there had been no more than "peaceful persuasion." The court said (p. 325):

"We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

"Such a ban of free communication is inconsistent with the guaranty of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American Steel Foundries v. Tri-City Council,* 257 U. S. 184, 209 [66 L. Ed. 189, 199, 42 Sup. Ct. 72, 27 A. L. R. 360]. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ."

The ruling in the *Swing Case* was followed in *Bakery Drivers Local v. Wohl,* 315 U. S. 769, 62 Sup. Ct. 816, 82 L. Ed. 1178, and *Cafeteria Employees Union v. Angelos,* 320 U. S. 293, 64 Sup. Ct. 126, 88 L. Ed. 58, and recognized by this court as being binding on us in *Wisconsin E. R. Board v. International Asso., etc.,* 241 Wis. 286, 302, 6 N. W. (2d) 339.

These cases must be accepted as stating the settled law that a state may not constitutionally prohibit the exercise of free speech by picketing by narrowing the field of a labor dispute to include only the relationship between an employer and his employees.

Five decisions of the United States supreme court are cited by plaintiff as authority for its assertion that the doctrine of the *Swing* and *Wohl Cases* has been limited by that court: *Giboney v. Empire Storage & Ice Co.* 336 U. S. 490, 69 Sup. Ct. 684, 93 L. Ed. 834; *Hughes v. Superior Court,* 339 U. S. 460, 70 Sup. Ct. 718, 94 L. Ed. 985; *Building Service Union v. Gazzam,* 339 U. S. 532, 70 Sup. Ct. 784, 94 L. Ed. 1045; *International Brotherhood of Teamsters v. Hanke,* 339 U. S. 470, 70 Sup. Ct. 773, 94 L. Ed. 995; *Plumbers Union No. 10 v. Graham,* 345 U. S. 192, 73 Sup. Ct. 585, 97 L. Ed. 946.

We do not so construe them. In each of them the right of the state to enjoin picketing under the circumstances existing was recognized. They, as well as others resulting in similar holdings, have been examined by us. It would serve no useful purpose to discuss each of them and to point out in what respect it is to be distinguished in its facts from those appearing in the instant case. It is enough to say that in each of them there were circumstances which the court said demonstrated a purpose on the part of the pickets to accomplish an unlawful purpose, in most of them more than a mere effort peacefully to persuade the employees by the use of a banner to join the interested union.

*By the Court.*—Judgment reversed, and cause remanded with directions to dissolve the injunction and dismiss the complaint.

A motion for rehearing was granted on October 5, 1955, and oral argument was heard January 12, 1956.

For the appellants there were briefs by *Padway, Goldberg & Previant,* attorneys, and *David Previant* and *David Leo*

*Uelmen* of counsel, all of Milwaukee, and oral argument by *David Previant*.

For the respondent there were briefs by *Lamfrom & Peck* of Milwaukee, attorneys, and *Leon B. Lamfrom* and *Jacob L. Bernheim* of Milwaukee, and *Hilbert W. Dahms* of Oconomowoc of counsel, and oral argument by *Leon B. Lamfrom*.

A brief was filed by *Bender, Trump, McIntyre, Trimborn & Godfrey*, attorneys, and *Walter H. Bender* of counsel, all of Milwaukee, for the Golden Guernsey Dairy Co-operative, as *amici curiae*.

The following opinion was filed February 7, 1956:

GEHL, J. (*on reargument*). We have concluded that we were in error in our original determination of the issues in this case, and, therefore, withdraw the opinion and the mandate previously entered. We are convinced that in our study of the issues presented we gave too little consideration to the fact that there are limitations upon the right of free speech, and that the prohibition of action against free speech is not intended to give immunity for every use or abuse of language. We gave insufficient notice to the fact that free speech is not the only right secured by our fundamental law, and that it must be weighed, here for instance, against the equally important right to engage in a legitimate business free from dictation by an outside group, and the right to protection against unlawful conduct which will or may result in the destruction of a business; that both the right to labor and the right to carry on business are liberty and property. We left out of calculation the rule that the court is to consider not only the established facts as they appear in the record, but that it should also give attention to the inferences reasonably and justifiably to be drawn therefrom.

In considering the right of freedom of speech it must be recognized that that right is to be evaluated with the right of the many who have no interest whatever in the relationships

between the defendant unions and those whom they seek to acquire as members; that by its very nature every right is related to a duty to exercise it so as to cause a minimum of harm to another, least of all to an innocent bystander; that the right may not be considered apart from that of society to maintain order; and that one who seeks freedom may not wholly ignore his neighbor's right to it.

"The effort in the cases has been to strike a balance between the constitutional protection of the element of communication in picketing and 'the power of the state to set the limits of permissible contest open to industrial combatants.'" *Teamsters Union v. Hanke* (1950), 339 U. S. 470, 474, 70 Sup. Ct. 773, 94 L. Ed. 995.

We have not found that the United States supreme court has ever held that the right of free speech is absolute and to be protected regardless of the effect its exercise may have upon other rights protected by the constitution. We find no cases decided by that court in which it has been held that a state is without power to curtail the right when, in the exercise of its authority to establish and declare its public policy, it determines that such curtailment is necessary to protect the public interest and property rights. On the contrary, the court has said that:

". . . since picketing is more than speech and establishes a *locus in quo* that has far more potential for inducing action or nonaction than the message the pickets convey, this court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity." *Building Service Union v. Gazzam* (1950), 339 U. S. 532, 537, 70 Sup. Ct. 784, 94 L. Ed. 1045.

In *Bakery Drivers Local v. Wohl* (1942), 315 U. S. 769, 775, 62 Sup. Ct. 816, 86 L. Ed. 1178, the court said:

"A state is not required to tolerate in all places . . . even peaceful picketing by an individual."

And in a concurring opinion Mr. Justice Douglas said (p. 776):

"Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive regulation."

In *Giboney v. Empire Storage Co.* (1949), 336 U. S. 490, 502, 69 Sup. Ct. 684, 93 L. Ed. 834, the court, after calling attention to the importance to our society of a vigilant protection of freedom of speech, said:

"But placards used as an essential and inseparable part of a grave offense against an important public law cannot immunize that unlawful conduct from state control. *Virginia Electric Co. v. Board,* 319 U. S. 533, 539; *Thomas v. Collins,* 323 U. S. 516, 536, 537, 538, 539–540. Nor can we say that the publication here should not have been restrained because of the possibility of separating the picketing conduct into illegal and legal parts. *Thomas v. Collins, supra,* at 547. For the placards were to effectuate the purposes of an unlawful combination, and their sole, unlawful immediate objective was to induce Empire to violate the Missouri law by acquiescing in unlawful demands to agree not to sell ice to non-union peddlers. It is true that the agreements and course of conduct here were as in most instances brought about through speaking or writing. But it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed. See *e. g., Fox v. Washington,* 236 U. S. 273, 277; *Chaplinsky v. New Hampshire,* 315 U. S. 568. Such an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society."

"Picketing is not beyond the control of a state if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance." *Hughes v. Superior Court* (1950), 339 U. S. 460, 465, 70 Sup. Ct. 718, 94 L. Ed. 985.

Consistently with the foregoing, we said in *Retail Clerks'*
*Union v. Wisconsin E. R. Board* (1942), 242 Wis. 21, 37,
6 N. W. (2d) 698, that:

"Peaceful picketing is now recognized as an exercise of
the right of free speech and therefore lawful. [Citing cases.]
However, it cannot be made the cover for concerted action
against an employer in order to achieve an unlawful or pro-
hibited object, such as to compel an employer to coerce his
employees to join a union."

There is nothing in *American Federation of Labor v.*
*Swing* (1941), 312 U. S. 321, 323, 61 Sup. Ct. 568, 85 L.
Ed. 855, to support the proposition that freedom of speech
includes the right by picketing to induce an employer or an
employee to violate the provisions of the Wisconsin statutes,
to which we shall later refer, and thus engage in an unfair
labor practice and set at naught the declared public policy of
the state. No statutory violation was involved in the *Swing*
*Case.* The issue was whether "the constitutional guaranty of
freedom of discussion [was] infringed by the common-law
policy of a state forbidding resort to peaceful persuasion
through picketing merely because there is no immediate
employer-employee dispute." All that was decided in that
case was that such a policy does abridge the exercise of
freedom of speech by peaceful picketing. The case is dis-
tinguishable from the instant case in that it did not appear
in that case that the picketing was in violation of any valid
statute or that it was for an unlawful purpose. See discussion
of the *Swing Case* in *Wisconsin E. R. Board v. Milk, etc.,*
*Union* (1941), 238 Wis. 379, 299 N. W. 31.

By enactment of sec. 111.06 (2), Stats., the legislature
has declared it to be an unfair labor practice and a violation
of the public policy of this state for an employee individually
or in consort with others:

"(a) To coerce or intimidate an employee in the enjoy-
ment of his legal rights, including those guaranteed in sec-
tion 111.04, or to intimidate his family, picket his domicile,

or injure the person or property of such employee or his family.

"(b) To coerce, intimidate, or induce any employer to interfere with any of his employees in the enjoyment of their legal rights, including those guaranteed in section 111.04, or to engage in any practice with regard to his employees which would constitute an unfair labor practice if undertaken by him on his own initiative."

Sec. 111.04, Stats., provides that:

"Employees shall have the right of self-organization and the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection; and such employees shall also have the right to refrain from any or all of such activities."

By the provisions of sub. (3) of the statute it is made an unfair labor practice for *any person* to do any act so prohibited.

The United States supreme court has conceded to the states the right to prohibit the conduct defined in these statutes. In *Building Service Union v. Gazzam, supra,* the court recognized the right of the state of Washington to declare its public policy on the subject and said (p. 538):

"The state of Washington has by legislative enactment declared its public policy on the subject of organization of workers for bargaining purposes. The pertinent part of this statute is set forth in the margin. The meaning and effect of this declaration of policy is found in its application by the highest court of the state to the concrete facts of the instant case. Under the so-enunciated public policy of Washington, it is clear that workers shall be free to join or not to join a union, and that they shall be free from the coercion, interference, or restraint of employers of labor in the designation of their representatives for collective bargaining. Picketing of an employer to compel him to coerce his employees' choice of a bargaining representative is an attempt to induce a transgression of this policy, and the state here restrained the advocates of such transgression from further action with like

aim. To judge the wisdom of such policy is not for us; ours is but to determine whether a restraint of picketing in reliance on the policy is an unwarranted encroachment upon rights protected from state abridgment by the Fourteenth amendment." (The statute referred to is similar to our sec. 111.06 (2) (b).)

The question then arises whether the defendants violated sec. 111.06 (2) (b), Stats., and thereby engaged in picketing for an unlawful purpose. The trial court refused to find, as plaintiff requested:

"That the picketing of plaintiff's premises has been engaged in for the purpose of coercing, intimidating, and inducing the employer to force, compel, or induce its employees to become members of defendant labor organizations, and for the purpose of injuring the plaintiff in its business because of its refusal to in any way interfere with the rights of its employees to join or not to join a labor organization."

We are of the opinion that the finding should have been made. Picketing may be more than free speech. When it is conducted, as it was in this instance, upon a rural highway at the entrance to a gravel pit where an exceedingly small number of possible or probable patrons of the owner's business might pass and be influenced by the union's banner, it is more than the mere exercise of the right of free communication. One would be credulous, indeed, to believe under the circumstances that the union had no thought of coercing the employer to interfere with its employees in their right to join or refuse to join the defendant union. We have not the slightest doubt that it was the hope of the union that the presence of pickets at plaintiff's place of business would interfere with its operation and deprive it of delivery service, thus bringing pressure upon it to coerce its employees to join the union.

The message carried upon the union's banner could not possibly have been intended for the enlightenment of plaintiff's employees who "had been contacted by agents of the defendants for the purpose of inducing [them] to join one or

more of defendant labor organizations, and . . . had indicated to defendant unions' agents that they did not desire to join any of said labor organizations, and . . . [who at the time of trial] had continued to refuse to become members of any of defendant labor organizations," as was found by the trial court, and which finding is not attacked upon this appeal. Conducted as the picketing was upon a country road and at the scene of the operation of a business which is ordinarily patronized by only a small part of the public, the message carried by the pickets could not have been intended for the guidance of the community. It is clear to us that its only purpose was to influence those who were engaged in transporting supplies and materials to and from plaintiff's place of business and that it was conducted in the hope that these persons would refuse to continue to serve plaintiff and thereby compel it to choose between two alternatives,—permit the continuance of the picketing and suffer the consequent loss of profits and possibly of its business, or by some means or other to coerce or intimidate plaintiff's employees to join one of the unions, and thereby violate the provisions of sec. 111.06 (1) (a), Stats.

At this point it is important to note that the court made a finding (not attacked upon this appeal):

"That the drivers of several trucking companies have refused to deliver and haul goods and materials to and from plaintiff's premises as a result and in consequence of defendants' picketing of the plaintiff's premises, resulting in great inefficiency, inconvenience, extra labor and expense, and much damage to plaintiff."

And a conclusion (also not attacked):

"That the plaintiff has suffered, and continuation of defendants' conduct would further cause it to suffer, irreparable damage; and that the plaintiff has no adequate remedy at law."

The inference that the picketing was conducted for an unlawful purpose is inescapable.

We are of the opinion that the court should have made the finding requested by the plaintiff, and that, since the facts as to which the request was made are undisputed and the inferences are only one way, we should reverse for error in so refusing. 5 C. J. S., Appeal and Error, p. 802, sec. 1675. If, however, we may not do that, we are at liberty to and should supply the finding.

In *Pappas v. Stacey* (1955), 151 Me. 36, 116 Atl. (2d) 497, a case in many respects similar to this and regarding which more will be said, the Maine court supplied a similar finding and said that the rule that a trial judge's finding should not be reversed unless it clearly appears that the decision is erroneous, is not applicable in a case which involves no oral testimony. The reason for the rule to which the court refers is obvious. The appellate court must give weight to the findings of a trial court made in a contested matter upon oral testimony where the trial judge is in a position to pass on the credibility of the witnesses and the weight to be given to their testimony. He has full opportunity to observe the demeanor of the witnesses and judge their veracity—the appellate court does not. The reason for the rule disappears, however, when the appeal is presented upon no more than pleadings and affidavits, as is the case here. This court has held that a statement of a trial court denominating as a finding that which is in the nature of a legal conclusion from undisputed evidence may be disregarded by us, *Weigell v. Gregg* (1915), 161 Wis. 413, 154 N. W. 645, that a finding upon practically undisputed evidence is not as conclusive as it is in cases where there is a conflict of evidence, *Saylor v. Marshall & Ilsley Bank* (1937), 224 Wis. 511, 272 N. W. 369, that where the question presented is one of applying the law to the undisputed facts we are not bound by the trial court's findings, *Dairy Queen of Wisconsin, Inc., v. McDowell* (1952), 260 Wis. 471, 51 N. W. (2d) 34, 52 N. W. (2d) 791, and in *Will of Mechler* (1944), 246 Wis. 45, 55, 16 N. W. (2d) 373, we said that:

"Generally, the rule applicable to findings of fact made by the trial court does not apply where there are no disputed questions of fact because the reason for the rule itself fails. (In a certain class of cases inferences are said to be within the rule.) The reason for the rule is that fact finding is primarily a function of the trial court while on appeal this court deals mainly with questions of law. The position of the trial court for the determination of factual questions is obviously superior to that of the appellate court, in that the trial court has an opportunity to observe the witnesses, note their demeanor, the manner in which they testify, their intelligence or lack of it, and many other intangible things which it is impossible to place upon a court record. None of these considerations apply to a determination of a court made upon undisputed facts where the interpretation of a written instrument is under consideration. The reason for the rule failing, the rule itself fails."

We see no distinction between the case where the court is called upon to deal with or construe a written instrument and where, as here, the court is required to study only pleadings and affidavits.

*Pappas v. Stacey, supra,* was a case strikingly similar in its facts. There was peaceful picketing conducted for the purpose of seeking to organize nonunion employees. There was no dispute between the employer and his employees. The plaintiff had suffered and would continue to suffer in his business as a result of the picketing. The court held that the picketing was conducted for an unlawful purpose, in violation of a statute which contains provisions quite similar to those with which we are concerned, and which read as follows (116 Atl. (2d) 498):

" 'Workers shall have full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection, free from interference, restraint, or coercion by their employers or other persons. . . .' "

The parties had stipulated that the picketing was conducted for the sole purpose of seeking to organize employees of the

plaintiff but the court supplied the finding, as we do here, that the purpose of the picketing was to coerce the employer to bring pressure upon the employees to join the union, and that compliance with the pressure so exerted would result in a violation of the statute as being interference with the right of the employees to choose their own representatives. The court held that the restraint of the picketing by the lower court would not abridge the right of free speech under the federal constitution. The court was careful to point out that although the case was one to be treated as involving an unlawful strike, the same result would have to be reached if only picketing were involved.

We quote at some length from the opinion of the court because we believe that its expression is a sufficient answer to the contention of the union and because its language is clearly applicable to our problem. Among other things the court said (116 Atl. (2d) 499, 500, 501, 503):

"Under the statute . . . the employee, or worker, is protected from 'interference, restraint, or coercion by their employers or other persons. . . .' The worker must be left free from interference by employer or other persons in reaching a decision whether to join or refrain from joining a union. It follows necessarily that pressure cannot lawfully be directed against the employer to force him to interfere with the free choice of his employees. The plaintiff cannot lawfully be placed in a position where compliance with the strikers' demands requires action in violation of the law of the state.

"This is, however, precisely what the strikers here seek to accomplish. In brief, the strike for organizational purposes is unlawful for it is by its very nature destructive of the protection for the employees provided by the statute. . . .

"A coercive force is generated by the picketing to secure new members for the union. It is apparent that this force is applied to the employer to urge his employees to join the union to save his business, and to the employees to join to save their livelihood.

"In reaching for the employees, there is a steady and exacting pressure upon the employer to interfere with the free choice of the employees in the matter of organization. To say

that the picketing is not designed to bring about such action is to forget an obvious purpose of picketing—to cause economic loss to the business during noncompliance by the employees with the requests of the union. . . .

"The purpose of the picketing here, that is the immediate purpose, is solely to bring employees into Local 390. We are not interested in the ultimate form of the relations between the plaintiff and his employees. . . .

"The . . . statute [to which we have referred], is a solemn declaration of the public policy of our state. It is the law, duly enacted by the legislature, which must govern the decision in this case. Within the plain and clear meaning and intent of the statute we find, as we have indicated, a public policy against peaceful picketing at the place of business for organizational purposes. In our opinion the restraint of such picketing does not abridge the right of free speech under the decisions of the supreme court."

It is worthy of note that an appeal was taken to the United States supreme court. There is no record of the federal court's action except an entry in its journal, as follows (350 U. S. 870, 76 Sup. Ct. 117, 100 L. Ed. 000) :

"The motion to dismiss is granted and the appeal is dismissed. Mr. Justice BLACK and Mr. Justice DOUGLAS would note probable jurisdiction."

It would appear from this entry that the court dismissed the appeal because no federal question was presented, suggesting that the court did not consider itself bound by the rule of the *Swing Case* which, when this case was first studied by us, we considered as requiring reversal.

The defendants contend that we may not be concerned with the fact that the picketing has caused a loss to plaintiff. We may concede that workmen's infliction of incidental damage to others by use of lawful methods of action in the field of labor does not warrant injunctive relief. Counsel have called our attention, however, to no authority, nor have we been able to find one, for the proposition that the courts must close their eyes to the loss where the conduct which causes

the loss constitutes a violation of a statute, as we find in the case here.

We conclude that the picketing was conducted for an unlawful purpose and that, therefore, the trial court properly enjoined it.

Our decision is not to be construed as holding that the state may forbid peaceful picketing solely because there is no immediate employer-employee dispute as was held in the *Swing Case.*

*By the Court.*—The original mandate herein is vacated and a mandate substituted affirming the judgment.

CURRIE, J. (*dissenting*). I must respectfully dissent from the majority opinion filed upon the rehearing granted in this case because neither the briefs of counsel, nor anything stated in the new opinion, convince me that our original opinion was erroneous. I would adhere to such original opinion except in the one minor respect hereinafter mentioned.

There is much stated in the new opinion with which I fully concur although disagreeing with the final result determined therein. Before touching upon the area of dissent it would seem advisable to list the matters as to which there is complete agreement. These are:

(1) While the wording on the signs carried by pickets constitutes the exercise of free speech, the physical presence of the pickets makes picketing something more than free speech.

(2) Because picketing does embrace more than free speech, any state has the right to regulate or prohibit the same when carried on with respect to a business, whose labor relations are not subject to federal regulation under the Taft-Hartley Act, if conducted to achieve an unlawful objective; and in exercising such right the state does not violate the provisions of the First and Fourteenth amendments to the United States constitution.

(3) Picketing, which is conducted for the purpose of coercing or inducing an employer in such a business to interfere with the right of his employees to join any labor organization of their own choosing, or to refrain from so doing, is for an unlawful objective in that it violates the provisions of sec. 111.06 (2) (b), Stats.

(4) Where a question of fact is presented on an appeal to this court as to whether peaceful picketing was conducted for an unlawful objective, and no parol testimony had been taken before the trial court but instead the proof in the record consists solely of affidavits or stipulated facts, this court is not concluded by findings of the trial court based upon inferences drawn from such affidavits or stipulated facts but is free to draw its own inferences from such record.

The trial judge in the instant case expressly found "that the purpose of the picketing was to induce the plaintiff's employees to organize and affiliate with defendant's [sic]." The request of plaintiff's counsel for an express finding, that the picketing had been carried on for the purpose of coercing or inducing the plaintiff employer to interfere with the rights of its employees to join or not join the defendant unions, was denied. Plaintiff had expressly pleaded that the picketing violated sec. 111.06 (2) (b), Stats., so that such requested finding was in keeping with such allegation. This court in its original opinion expressly determined that *"the testimony would not have supported a finding of the facts constituting a violation of either of the subsections"* [sec. 111.06 (2) (a) or 111.06 (2) (b)]. See page 320 of the original opinion.

*Plaintiff at no time pleaded that the picketing constituted a violation of sec. 111.06 (2) (a), Stats.,*[1] a fact which was

---

[1] Sec. 111.06 (2) (a), Stats.. reads:

(2) It shall be an unfair labor practice for an employee individually or in concert with others:

(a) To coerce or intimidate an employee in the enjoyment of his legal rights, including those guaranteed in section 111.04, or to intimidate his family, picket his domicile, or injure the person or property of such employee or his family.

again conceded in plaintiff's brief on rehearing. Therefore, for the purpose of this appeal, sec. 111.06 (2) (a) should not have been referred to in our original opinion nor is it proper to consider its possible application on the rehearing. Plaintiff's right to an injunction restraining the picketing must stand or fall on the issue of whether the picketing violated sec. 111.06 (2) (b).

We come now to an analysis of the facts appearing in the record. No demand was ever made by or in behalf of the defendants upon the employer for union recognition or otherwise. The defendant unions had, however, made persistent efforts by personal solicitation to induce plaintiff's employees to join the defendant unions which efforts failed. These efforts to organize were then followed by the peaceful picketing. The drivers of trucks of other employers refused to cross the picket line to haul plaintiff's product or to make delivery of materials to plaintiff's gravel pit, thereby causing damage to the plaintiff.

As pointed out in the majority opinion, the picketing was conducted at a spot out in the country where there was little travel by the public. This permits of the reasonable inference that the picketing was not for the purpose of disseminating information to the general public. The two remaining conceivable objectives are: (1) To attempt to induce plaintiff's employees to join the defendant unions; or (2) to coerce the plaintiff employer into taking some affirmative action of a coercive nature to induce its employees to join the defendant unions. It is only if the last of these two alternatives is found to be the purpose of the picketing that an injunction may be entered restraining the picketing because plaintiff so limited the issue by its pleadings and its contentions in the trial court.

The mere fact that some damage resulted to the plaintiff employer from the picketing does not establish that the picketing was for an unlawful purpose. *Wisconsin E. R., Board v. Retail Clerks Int. Union* (1953), 264 Wis. 189,

194, 58 N. W. (2d) 655; *Painters & Paperhangers Local v. Rountree Corp.* (1952), 194 Va. 148, 154, 72 S. E. (2d) 402, 405. The facts that the defendants prior to the picketing had attempted by personal solicitation to induce the employees to join the defendant unions while no demand whatsoever was ever made upon the plaintiff employer, strongly supports the inference drawn by the learned trial judge that the picketing was for the purpose of inducing some conduct on the part of the employees. This seems to me to be a more reasonable inference than that its objective was to cause the employer to engage in the unlawful activity prohibited by sec. 111.06 (1) (a), Stats.

The inference which the majority of the court draws from these acts of solicitation of the employees prior to the picketing runs exactly counter to the reasoning of the Missouri court in *Bellerive Country Club v. McVey* (Mo. 1955), 284 S. W. (2d) 492. In that case, as in the instant case, the plaintiff employer sought to enjoin peaceful picketing on the ground that its objective was to seek to coerce the employer to take action to force its employees into the union doing the picketing, thereby rendering such objective unlawful under Missouri law. About a year prior to the picketing the union contacted the plaintiff country club and asked permission to come upon the club's property to talk to the employees in order to induce them to join the union. This request was denied. In the year which ensued between such request and the picketing, the union made no attempt to contact the employees in any way to induce them to join. The picketing was instituted on the opening day of the Western Open Golf Tournament at the club and as a result deliveries of such items as beer and soft drinks were immediately cut off because of the refusal of truck drivers to cross the picket line, and a union orchestra refused to play at a scheduled club dance. One of the reasons advanced by the Missouri court, in holding that the picketing was for an unlawful objective,

was the failure of the union to have undertaken any solicitation of the employees for union membership prior to the picketing. The majority opinion in the instant case, on the other hand, bases its inference of unlawful objective (to cause the plaintiff employer to take action to force its employees into the defendant unions) on the fact that the unions had prior to the picketing solicited the employees for membership but such prior organizing activities had been unsuccessful.

It is elementary that the burden of proving an unlawful purpose in the instant case is upon the plaintiff. *20 Am. Jur.*, Evidence, p. 1043, sec. 1189, states:

"To establish a theory by circumstantial evidence, the known facts relied upon as a basis for the theory must be of such nature and so related to each other that the only reasonable conclusion to be drawn therefrom is the theory sought to be established. *A fact is not proved by circumstances if they are merely consistent with its existence or if other inferences may reasonably be drawn from the facts in evidence.*" (Emphasis supplied.)

Applying the above-stated principle to the instant case, I feel that this court should uphold the inference drawn by the trial court, viz.: that the objective of the picketing was for organizational purposes to induce the employees to join the defendant unions.

There is an even more compelling reason why an injunction should not be grounded in this case on any application of the provisions of sec. 111.06 (2) (a), Stats., than the fact that such issue was not raised in the trial court or in this court until the motion for rehearing. Such further reason is that there is a grave doubt as to whether peaceful organizational picketing conducted at a place of employment solely for the purpose of inducing employees to join a union can ever be held to constitute a violation of sec. 111.06 (2) (a). To seek to induce employees to join a union is a *lawful objective*. In order for this court to hold that peaceful organiza-

tional picketing may be prohibited as a violation of sec. 111.06 (2) (a), it, therefore, necessarily follows that we would have to find that *the means and not the objective was unlawful.*

Thus far the United States supreme court has only upheld the right of a state to prohibit peaceful picketing when the picketing was conducted for an *unlawful objective.* It has never held that peaceful picketing may be enjoined as *an unlawful means to attain a lawful objective.* The dismissal by that court of the appeal from the judgment of the Maine court in *Pappas v. Stacey* (1955), 151 Me. 36, 116 Atl. (2d) 497, cannot be construed as upholding the right of a state to prohibit peaceful organizational picketing. In the *Pappas Case,* three employees of the plaintiff employer had gone on strike in an attempt to induce the employer to recognize the union and joined in the picketing. This in itself afforded adequate proof that the picketing had the unlawful objective of seeking to cause the employer to take action to coerce his employees into joining the union and the court so held. In addition, the court also held that even if the picketing were solely for organizational purposes it could be enjoined. Thus the decision found that the picketing could be enjoined on two grounds, the first of which had been upheld by prior decisions of the United States supreme court, and the second of which has not been.

The United States supreme court does not consider that an appeal presents a substantial federal question if the issue raised has been directly passed upon in its prior decisions. Stern & Gressman, Supreme Court Practice (2d ed.), p. 81, and *Palmer Oil Corp. v. Amerada Corp.* (1952), 343 U. S. 390, 72 Sup. Ct. 842, 96 L. Ed. 1022. Such court also will not review a state court judgment based upon two or more grounds, one of which presents no substantial federal question. Stern & Gressman, *supra,* p. 94, and note in 95 University of Pennsylvania Law Review (1947), 764, entitled

"Supreme Court Review of State Court Decisions Involving Multiple Questions."

Because of the gravity of the problem of whether peaceful organizational picketing may be enjoined as a violation of sec. 111.06 (2) (a), Stats., this court should not pass on such question until the issue has been properly raised in the trial court and the issue has been fully briefed and argued here. Neither was done in the instant case.