HANNA MINING COMPANY and others, Appellants, v. DISTRICT 2, MARINE ENGINEERS BENEFICIAL ASSOCIATION, A.F.L.–C.I.O., and others, Respondents.*

*February 4—April 13, 1964.*

* Motion for rehearing denied, with costs, on June 30, 1964.

434

438

For the appellants there were briefs by *Johnson, Fritschler, Barstow & Witkin* of Superior, attorneys, and *McCreary, Hinslea & Ray* of Cleveland, Ohio, of counsel, and oral argument by *Barney B. Barstow* and by *John H. Hanninen* of Cleveland, Ohio.

For the respondents there was a brief by *Borg, McGill & Moodie* of Superior, and *Pressman & Scribner* of New York, N. Y., and oral argument by *Douglas S. Moodie* and *David Scribner.*

FAIRCHILD, J. The gist of plaintiffs' claim, upon the merits, appears to be that MEBA's picketing, although non-violent, is for an unlawful purpose, and plaintiffs are therefore entitled to an injunction. Allegedly, MEBA is attempting to coerce plaintiffs to bargain with MEBA as the representative of the marine engineers, against the wishes of a majority of the latter. The picketing is allegedly intended to induce others to refuse to perform essential services for plaintiffs' vessels, in order to present plaintiffs with the choice between suffering substantial loss and unlawfully bargaining with MEBA. Under a similar theory, this court affirmed an injunction against otherwise peaceful picketing in *Vogt, Inc., v. International Brotherhood.*[1]

Because of the nature of plaintiffs' business, the effect of disruptions therein upon interstate and foreign commerce is obvious. Plaintiffs are employers within the meaning of NLRA,[2] and their nonsupervisory personnel are employees within its meaning. MEBA on the other hand has been held by NLRB to be a labor organization within the meaning of NLRA because some of the members of MEBA are employees as defined in NLRA.[3] Thus the question immediately arises whether a state court has any jurisdiction to deal with the merits of the matter.

The general rule (in the absence of mass picketing, violence, or overt threats of violence)[4] and some of the con-

---

[1] (1956), 270 Wis. 315, 71 N. W. (2d) 359, reversed on re-argument, 270 Wis. 321b, 74 N. W. (2d) 749, affirmed in *Teamsters Union v. Vogt, Inc.* (1957), 354 U. S. 284, 77 Sup. Ct. 1166, 1 L. Ed. (2d) 1347.

[2] 29 USCA, secs. 141 ff.

[3] See *Marine Engineers v. Interlake Co.* (1962), 370 U. S. 173, 82 Sup. Ct. 1237, 8 L. Ed. (2d) 418.

[4] *Auto Workers v. Wisconsin E. R. Board* (1956), 351 U. S. 266, 76 Sup. Ct. 794, 100 L. Ed. 1162; *Youngdahl v. Rainfair, Inc.* (1957), 355 U. S. 131, 78 Sup. Ct. 206, 2 L. Ed. (2d) 151.

siderations upon which the rule is based, have been laid down by the supreme court of the United States in *San Diego Unions v. Garmon* [5] as follows:

"At times it has not been clear whether the particular activity regulated by the States was governed by sec. 7 or sec. 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board.

" . . .

"To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by sec. 7, or prohibited by sec. 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States. However, the Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. This was the basic problem underlying our decision in *Guss v. Utah Labor Relations Board,* 353 U. S. 1. In that case we held that the failure of the National Labor Relations Board to assume jurisdiction did not leave the States free to regulate activities they would otherwise be precluded from regulating. It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act. In the absence of the Board's clear determination that an activity is neither protected nor pro-

---

[5] (1959), 359 U. S. 236, 244, 245, 246, 79 Sup. Ct. 773, 3 L. Ed. (2d) 775.

hibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. The withdrawal of this narrow area from possible state activity follows from our decisions in *Weber* and *Guss*. The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy."

In later cases, the supreme court of the United States has held that state courts have no power to enjoin activity which is an arguable violation of sec. 8 (b) of the NLRA,[6] or is arguably protected by the NLRA.[7]

The *Garmon* rule has been recently applied by the supreme court of the United States to the question of whether an organization (MEBA, as it happens) is a labor organization under NLRA. Where MEBA's conduct was of a kind arguably prohibited by NLRA if MEBA were a labor organization under NLRA, a state court must decline to assert jurisdiction over the activity as soon as the evidence before it is sufficient to show that MEBA is "arguably a 'labor organization.' " [8]

Picketing of a type commonly referred to as recognition picketing is made an unfair labor practice by sec. 8 (b) (7) of NLRA, but such is not an unfair labor practice in the present case if the objects of the picketing, viz: The plaintiffs' marine engineers, are deemed supervisory personnel and thus are not employees within the meaning of NLRA. Sec. 8 (b)

---

[6] *Construction Laborers v. Curry* (1963), 371 U. S. 542, 546, 83 Sup. Ct. 531, 9 L. Ed. (2d) 514.

[7] *Liner v. Jafco, Inc.* (1964), 375 U. S. 301, 84 Sup. Ct. 391, 11 L. Ed. (2d) 347. See *Local 248, U. A., A. & A. I. W. v. Wisconsin E. R. Board* (1960), 11 Wis. (2d) 277, 105 N. W. (2d) 271, certiorari denied (1961), 365 U. S. 878, 81 Sup. Ct. 1028, 6 L. Ed. (2d) 190, and *Markham v. American Motors Corp.* (1964), 22 Wis. (2d) 680, 685, 126 N. W. (2d) 753, 755.

[8] *Marine Engineers v. Interlake Co., supra,* p. 177, footnote 3.

(4), however, prohibits secondary boycotting which occurs when a union directs pressure, whether by strike or otherwise, against an employer or other person with whom it has no dispute or grievance, for the purpose of persuading or coercing that neutral person to stop dealing with a primary party with whom the union has a dispute, as a means of exerting pressure on the primary party.[9] Sec. 8 (b) (4) of the NLRA provides as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

"  . .  .

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in the clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

"  .  .  .  " [10]

As seen from the foregoing there is or may be a common denominator between recognition picketing and secondary

---

[9] See 3 CCH, Labor Law Reporter, par. 5220, p. 10,534 ff.
[10] 29 USCA, sec. 158 (1963 Suppl. p. 54).

boycotting. In both coercion may be accomplished through the effect of the activity upon neutral third parties. Plaintiffs' claim that MEBA, considered as a labor organization, is coercing plaintiffs by inducing work stoppages among dock workers and tug crews, employed by others, arguably charges an unfair labor practice under sec. 8 (b) (4) (B) of NLRA, relating to so-called secondary boycott. If the activity does not constitute a secondary boycott, the reason would seem to be that the activity was no more than "primary picketing," and apparently the regional director and general counsel were unconvinced that the activity went beyond primary picketing. It would seem to us, in contemplation of the *Garmon* rule as stated by the supreme court, that the drawing of the distinction between a secondary boycott and primary picketing should surely be performed by the NLRB. It may well be of significance also, that the activity considered by the general counsel took place in Duluth, Minnesota, in 1962, and the conduct which is made the basis for injunction occurred in Superior, Wisconsin, at later dates, and must at least differ in detail, if not in relevant substance.

If the picketing were deemed no more than primary, and if the marine engineers whom MEBA is seeking to represent were nonsupervisory, plaintiffs' claim arguably charges an unfair labor practice under sec. 8 (b) (7) of NLRA making it an unfair labor practice for a labor organization to picket an employer in order to force him to recognize it as the representative of employees for whom it has not been properly certified. Plaintiffs do not appear to claim that it is not arguable that the marine engineers are employees under the act. Indeed they filed a charge on the basis (presumably) that they were employees, and are asking state courts to proceed upon the general counsel's refusal to file a complaint.

Plaintiffs acknowledge the *Garmon* rule to the extent that a state agency or court has no jurisdiction over the conduct

arguably subject to NLRA until the NLRB has made a final determination that the conduct is not so subject. They stress the references in *Garmon* to the "exclusive primary competence" and "primary jurisdiction" of the NLRB and the statement that the determination must be "left in the first instance" to NLRB, and to the statement in *Marine Engineers v. Interlake Co., supra* (p. 185), that, "While the Board's decision is not the last word, it must assuredly be the first." They argue that the rulings of the general counsel are determinations of the NLRB. Thus they assert that they have fulfilled the *Garmon* rule for avoidance of conflict between NLRB and courts and state agencies. Since, they would say, it has been finally determined that the conduct complained of is not an unfair labor practice, and presumably that such conduct is not protected by the act because of the supervisory status of the people who are the object of MEBA's effort, the state is now free to apply its own law. Bypassing any difference between the conduct now alleged and the conduct complained of in Duluth, Minnesota, plaintiffs' logic seems clear, if they properly accord final legal significance to the acts of the general counsel. But we do not read *Garmon* as permitting this result.

. We consider that where a state agency or court is asked to restrain picketing which affects interstate or foreign commerce, under circumstances not within recognized areas of concurrent jurisdiction such as violent conduct, such agency or court must decline jurisdiction unless it be demonstrated that the activity is neither prohibited nor protected by NLRA. Such demonstration can be accomplished only where undisputed facts show conclusively that NLRA does not prohibit nor protect the activity, or where "compelling precedent applied to essentially undisputed facts" so shows, or NLRB has clearly so determined. Such determination is not made, however, by NLRB's failure "to determine the status of the disputed conduct by declining to assert jurisdiction, or

by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance." [11]

We recognize that in the circumstances of this case, the rule produces something of a paradox. MEBA's alleged organizational picketing is unlawful under Wisconsin law, and is probably not protected by federal law because of the supervisory status of the marine engineers. Such picketing cannot be prevented by NLRB procedure unless the NLRB general counsel has probable cause to believe that MEBA's conduct is a secondary boycott. Yet since such picketing approaches being unlawful under federal law as a secondary boycott, Wisconsin must decline to enjoin it. On the record before us we can perceive no escape consistent with the *Garmon* decision.

*By the Court.*—Order affirmed.

CURRIE, C. J., took no part.

[11] *San Diego Unions v. Garmon, supra,* footnote 5.